Jan'y Term,      B. and O. R. R. Co. *vs.* Supervisors.      1869.

# Wheeling.

*THE BALTIMORE & OHIO R. R. CO. *vs.* THE SUPERVISORS AND SHERIFF OF MARSHALL COUNTY.

January Term, 1869.

1. Although the charter of an incorporated company may be forfeited, yet the government which granted it may not choose to enforce the forfeiture and may give it validity by recognizing its existence, and by the extension of further franchises; and when the company accepts the provisions of such extension the former grant of incorporation must give way to it, wherever the provisions are inconsistent.

2. Property cannot belong to an incorporated company without being vested in it, and the respective shareholders in such an incorporated company constitute the company, and, therefore, property belonging to a company is vested in the shareholders in their corporate capacity and not as individuals or natural persons, and is consequently taxable in the name of the company.

3. The 7th section of the act of the general assembly of Virginia, passed March 6th, 1847,† held to mean that taxes may be assessed whenever the net income of the entire road of the B. & O. R. R. Co. shall exceed six per centum per annum on the capital invested, and not when the net income on that portion of the road being within the State of Virginia, and West Virginia since its creation, exceeds that amount on the capital invested in said States of Virginia and West Virginia. Also that the net income for the year 1863–64 did exceed six per centum on the capital invested.

4. The question as to when the property of the B. & O. R. R. Co. became taxable under the proviso of the said 7th section, is a question of fact, to be determined, if disputed, by a resort to the judicial tribunals of the State. No act or resolution of the legislature is required by the terms of the proviso, nor would be conclusive of the fact and binding on the company.

*This cause was argued at the July term, 1868, before Judges Brown and Maxwell, Judge Harrison being absent, but was not decided until this term.

†"Sect. 7. *Be it further enacted,* That the stock, property and profits of said company, so far as the same may be or accrue within this commonwealth, shall be subject to general taxation in like manner and on the same footing with other similar companies within this State: *Provided however,* that said taxing power shall not be exercised until and unless the net income of the said Baltimore and Ohio Railroad shall exceed six per centum per annum upon their capital invested."

5. As the condition under which the taxing power was to be exercised had happened, and no legislative declaration was necessary or could be binding on the company, there was no violation of the charter in assessing taxes on the property of the company and hence no interference with vested rights.

6. It was not error in the court below to refuse to direct a reference to a master, or an issue to a jury, to ascertain what the net income of the road was, in this case, as it sufficiently appears from the facts in the case.

7. The grant of privileges to a corporation is to be construed strictly against the corporation and in favor of the public; and the right of taxation will not be held to be surrendered unless the intention to do so is manifested by words too plain to be mistaken.

8. The phrase "general taxation" in the 7th section of the act of March 6th, 1847, held to mean that the property of the company was liable to all taxation for State, county and local purposes.

The questions arising in this case were principally upon the construction of the provisions of the statutes incorporating the B. & O. R. R. company. The material sections of those statutes are given by the judge who delivered the opinion of the court, in which opinion the merits of the controversy are substantially stated. Some questions, however, arose on the pleadings and proofs which require a more extended notice here.

It was proven that the B. & O. R. R. Co. extended its main stem from Baltimore, in Maryland, to Wheeling, in this State, a total distance of 379 miles, 246 miles whereof was in West Virginia and 136 miles in Maryland  That the cost of the road was estimated on the 30th day of September, 1863, including the rolling power and real estate, to be 24,945,093 dollars and 17 cents, of which 14,795,093 dollars and 17 cents was the cost of the road, rolling stock, &c., in West Virginia; that the net income of the company as ascertained by John King, the auditor (and witness) thereof, from the West Virginia portion of the line for the year ending January 31st, 1864, was 964,274 dollars and 71 cents.*

---

* The company in their proof showed the cost of the N. W. Va. railroad company to be 5,744,430 dollars and 08 cents, which they added to the cost of the main stem, thus making a total sum of 20,539,523 dollars and 25 cents, and applying the net earnings of the main stem, 964,274 dollars and 71 cents, to this total capital produced net earnings of 4 7-10 per cent.

There were other statements proven of the capital invested by the company, and also of the capital stock issued by it, for several years anterior to this latter period, but it does not appear to be necessary to give them here as the court only regarded the valuation and income of the road for the year which the taxes were assessed. It also appeared by the proofs in the cause that the company declared a dividend of three per cent. in March, 1863, on 13,111,525 dollars of capital stock, and two dividends of three per cent. each (one extra), in October, 1863, on 13,117,500 dollars of capital stock; also a divident of four per cent. in April, 1864, on 13,122,600 dollars of capital stock, and a further dividend of four per cent. in November, 1864, on 13,124,-400 dollars.

The answer of the defendant, in the court below, showed that on the 30th day of September, 1862, the capital invested in the B. & O. R. R. Co. was 32,650,643 dollars and 17 cents, and that the net income for the year ending then was 3,159,416 dollars and 64 cents; the answer further stated that they were unable to give the amount of capital invested and the net earnings for the years 1863 and 1864; but it was proven that the gross earnings of the company on the main stem of the road for the year ending January 31st, 1864, was 5,823,025 dollars and 73 cents, and that the cost of working the entire main stem for that time would not exceed or equal sixty per cent. of the gross earnings.

*G. H. Lee* for the appellant.

*Lamb* and *Stanton* for the appellees.

MAXWELL, J.   The Baltimore and Ohio railroad company was charged on the personal property books of the assessor for the first or upper district of the county of Marshall for the year 1864 with property of the value of 315,000 dollars, and was charged on the said books on account of the said property with a State tax for general purposes of the sum of 945 dollars, and with a further State tax for the

support of free schools of the sum of 315 dollars, and with a county tax or levy of the sum of 6,331 dollars and 50 cents, making in all the sum of 7,591 dollars and 50 cents. When the sheriff of said county was about to levy for and proceed to collect the said taxes so charged the said company obtained an injunction restraining him from levying for and collecting the said taxes. The case came on to be heard in the circuit court of Marshall county at the April term, 1867, of said court, when the court dissolved the injunction and dismissed the complainants' original and amended bills so as to allow the said sheriff to proceed with the collection of said taxes. But the said company not being satisfied with the decree dissolving the injunction has appealed to this court to have the case reviewed.

The petitioner assigns six different causes of error in the decree complained of, all denying in substance that the property of the said petitioner is liable for either the State or county taxes charged on the said property.

The Baltimore and Ohio railroad company was chartered by an act passed by the general assembly of the State of Maryland on the 28th of February, 1827.

The 22d section of said act provides, "That if the said road shall not be commenced in two years from the passage of this act and shall not be finished within this State in ten years from the time of the commencement thereof, then this act shall be null and void."

This Maryland charter was confirmed by the general assembly of Virginia with certain conditions and restrictions, not material to this case, by an act passed on the 8th day of March, 1827.

In 1836, 1837, 1838 and 1839 other acts were passed by Virginia authorizing conditional subscriptions to the work of the company, the act of 1838 also extending the time for the completion of the work in Virginia until the 4th day of July, 1843, upon the conditions mentioned in said act. The conditions mentioned in these several acts were never complied with, nor the subscriptions therein provided for, made, but the road was nevertheless completed in 1843 as far as

Cumberland. The work upon the road in Virginia between Harper's Ferry and Cumberland must have been done after the expiration of the time limited in the charter without any extension thereof, except the extension mentioned in the act of 1838, which never took effect, because it was dependant upon conditions never complied with.

In 1844–45 and in 1845–46 other acts were passed proposing terms and conditions upon which the company might complete its road through Virginia, but neither of these acts was accepted by the company.

On the 6th of March, 1847, another act was passed which was accepted by the company, and under which the company completed its road through Virginia, subject to such parts of its original charter as remain unaltered.

It is claimed here in behalf of the appellees that the act of March 8th, 1827, constitutes no part of the charter of the Baltimore and Ohio railroad company, but that the act of March 6th, 1847, and the general railroad law referred to in the last named act constitute the charter of said company for the reason that the road was not completed in the time named in the act of 1827, whereby the act became null and void, and for the further reason that if the said act did not become null and void it was entirely superseded by the act of 1847.

In the case of the *Baltimore and Ohio railroad company* vs. *Gallahues' adm'r*, 12 Grat., 655, it was held that the Baltimore and Ohio railroad company was a Virginia corporation, by virtue of the act of March 8th, 1827, thus recognizing the existence of the act. But it is claimed by the counsel for the appellees that this case is no authority, because the effect of the 22d section declaring the charter null and void if the road was not completed in the time specified, was not considered by the court. This question could not have been considered by the court, because the act of 1827 had been accepted and the company had become a corporation under it and had made its road as far as Cumberland before the passage of the act of 1847, so that although the charter was perhaps at the time of the passage

of the act of 1847 forfeited, yet that question could only be raised by a proper proceeding in the name of the State against the company to judicially determine and declare the forfeiture and annul the charter. 2 Kent Com., 393; *The King* vs. *Amery*, 2 Term Rep., 515; *Canal Company* vs. *Railroad Company*, 4 Gill & Johnson, 1; *Thomas* vs. *The People*, 23 Wend., 535; Angell & Ames on Corporations, sec. 777; *Crump, &c.*, vs. *United States Mining Company*, 7 Grat., 352.

Although a charter of an incorporated company may be forfeited, yet the government which granted the charter may not choose to enforce the forfeiture, and it seems that if the charter of the Baltimore and Ohio railroad company was in fact forfeited, as claimed by counsel, the State of Virginia did not choose to enforce such forfeiture.

It seems to me quite plain that the charter of 1827 has not become inoperative by reason of the section declaring it void if the road was not completed in the time specified.

Nor do I agree that the act of 1827 is wholly superseded by the act of 1847. The act of 1847 could not have been intended as a substitute for the act of 1827, but was intended to authorize the Baltimore and Ohio railroad company, which is recognized by the act itself as an existing company, to complete its road through the State of Virginia under the act of 1827, subject to the restrictions and upon the conditions imposed on the company by the said act of 1847. Such must have been the view taken by the court in the case of the *Baltimore and Ohio railroad company* vs. *Gallahue.*

The question may be asked why was it that the company accepted the act of 1847 if its charter under the act of 1827 was not forfeited? That the State had no power to impose on the company without its consent the act of 1847 is clear. But the reason why the company accepted the terms proposed in the act was probably because it was supposed that, if the company went on to complete the road under the original charter proceedings would be taken to vacate its charter.

It is, however, not necessary to inquire for the reason;

why the company accepted the act of 1847, the fact exists that it did accept it and the effect is the same no matter what the reason for accepting it may have been.

The act of 1847 having been accepted by the company, together with the act of 1837, establishing general regulations for the incorporation of railroad companies, so far as properly applicable, became parts of the charter of said company along with the act of 1827, the act of 1827 giving way to both or either of the acts of 1847 or 1837 whenever inconsistent with them or either of them.

The 18th section of the original charter contains this provision: "The shares of the capital stock of the said company shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burthen by the State's assenting to this law."

The 23d section of the act of 1837, prescribing general regulations for the incorporation of railroad companies, provides that, "All machines, wagons, vehicles or carriages belonging to any company incorporated subject to the provisions of this act, together with all their works, and all profits which shall accrue from the same, shall be vested in the respective shareholders forever, in proportion to their respective shares, and shall be deemed personal estate."

The 7th section of the act of March 6th, 1847, provides, "That the stock, property and profits of said company, so far as the same may be or accrue within this commonwealth, shall be subject to general taxation in like manner and on the same footing with other similar companies within this State: *Provided, however*, That said taxing power shall not be exercised until and unless the net income of said Baltimore and Ohio railroad shall exceed six per centum per annum upon their capital invested."

The controversy in this case depends on the construction to be given to these three sections contained in the three different acts referred to, upon the facts as they appear in the record. The valuation of the property of the company was ascertained and placed upon the books of the assessor for taxation, under the fifty-third section of the "act to pro-

vide for the assessment of taxes," passed by the legislature of this State December 3, 1863, the officers of said company having failed to make out and return to the assessor a list of property under the fifty-second section of the said act.

The first cause assigned for error by the petitioner is that: "The Baltimore and Ohio railroad company having been, by the act of the 6th of March, 1847, which was accepted by said company, declared subject in all respects to the act establishing general regulations for the incorporation of railroad companies, passed March 11th, 1837, and by the 23d section of the last named act, it being declared that the property and profits of a railroad company should be vested in the several stockholders thereof in proportion to their respective shares, and declared to be personal estate; it follows that the property and profits of the petitioner could only be assessed and charged with taxes in the names of the several stockholders in whom the same was vested in proportion to their respective shares, and could not be so assessed and charged in the name of the company in which said property and profits were not vested."

If it be true that the property belonging to the company might be assessed and charged with taxes in the names of the several stockholders, by the necessary legislation, it does not follow that if not so taxed it cannot be assessed and charged with taxes in the name of the company. But what is the meaning of the 23d section of the act referred to?

The language is, "All machines, wagons, vehicles or carriages belonging to any company," &c., "shall be vested in the respective shareholders," &c.; can property belong to a company without being vested in the company? But who or what constitutes the company? The respective shareholders in proportion to their respective interests.

The obvious meaning of the section then must be that the property belonging to the company is vested in the shareholders in their corporate capacity and not as individuals or natural persons, and is consequently taxable in the name of the company.

The second cause of error assigned is that, "if the prop-

erty and profits in possession of your petitioner for the ben-
efit of the stockholders, who were the owners thereof, un-
der the law, could be at any time assessed and charged with
taxes in the name of your petitioner, yet that under the 7th
section of the act of March 6th, 1847, which created the
only qualification to the total exemption from taxation
granted by the original charter of the company, the taxing
power thereby reserved was only to be exercised when and
after the net income upon the capital invested in the State
of Virginia, and after its creation, in the State of West Vir-
ginia, should exceed the rate of six per centum per annum,
and upon the pleadings and proofs in the cause it is not
made to appear that such net income has exceeded the rate
of six per centum per annum upon the capital invested in
said State, and so that the time has not yet arrived at which,
nor has the condition happened upon which, the said taxing
power could lawfully be exercised over the said property
and profits." The language used by the petitioner that the
taxing power reserved " was only to be exercised when and
after the net income upon the capital invested in the State
of Virginia, and after its creation, in the State of West Vir-
ginia, should exceed the rate of six per centum per annum,"
is not contained or used in the section referred to.

The Baltimore and Ohio railroad extends from the city of
Baltimore through the territory of the States of Maryland
and West Virginia to the city of Wheeling, and is the work
of the Baltimore and Ohio railroad company, and there can
be no good reason assigned why the section should not be
construed as it is written and be held to mean what the
words used import. The language used in the proviso
referred to and before quoted is: " That the said taxing
power shall not be exercised until and unless the net income
of the said Baltimore and Ohio railroad shall exceed six per
centum per annum upon their capital invested."

Capital how invested it may be asked? Invested
in and upon the railroad according to the terms of
the charter. The language cannot be limited as claimed
by the petitioner to that portion of the railroad which is

now in this State, but must be held to apply to the entire road and to the capital invested upon the road. It is quite clear from the pleadings and proofs in the cause that the net income of the said road for the year 1864, for which year the taxes are charged as well as for the preceding year did exceed largely six per centum upon the capital invested upon said road. And if the figures given by Mr. King, the auditor of the company, be correct (but if not correct the error is in favor of the company) the net income of the road exceeded six per centum for the year 1864, upon the capital invested in said road in this State. Mr. King estimates the cost of the road, second track, rolling power and real estate in this State at 14,795,093 dollars and 17 cents. He estimates the net earnings of that part of the road which is in this State at 964,274 dollars and 71 cents for the year 1864. The amount stated as the net earnings or income of the road will be found upon calculation to exceed six per centum upon the amount stated as invested in the road in this State by the sum of 76,569 dollars and 12 cents. So that if the pretentions of the petitioner were even correct the property of the company taxed was subject to taxation at the time it was taxed.

The third cause of error assigned is that, "it is clear from the said act last referred to that before the said taxing power was to be exercised, it was the intention of the legislature that it should be first ascertained and declared by act or resolution of that body, or by some other appropriate method, under its authority, that the condition had happened upon which the taxing power might lawfully be exercised, and it was not to be left to the local officer of any one of the counties through which the road passed to take upon himself the duty of determining that question. No such act or resolution was ever passed by the legislature of Virginia or by that of West Virginia, nor was it ever ascertained by any competent authority under either, that the net profits of the road had reached the point at which taxation might commence."

The proviso in the act declaring when the taxing power

should be ·exercised is part of the contract between the State and the company, not to be changed by either without the consent of the other. When the property of the company should become liable to taxation is a question of fact, and whenever the fact mentioned exists the liability to taxation exists also, No act or resolution of the legislature could make the property of the company liable to taxation before the fact occurs. Any such act or resolution would impair the obligation of the contract, and consequently violate the constitution of the United States and of this State and be null and void. And when the liability to taxation exists the legislature cannot, under the limitations of the constitution of the State, release the property of the company, or any part thereof, from taxation, unless it might be upon some new consideration moving from the company, such as, for instance, the modification or surrender of some charter privilege. Nor would any act or resolution of the legislature, declaring that the condition had happened upon which the taxing power might be exercised, be conclusive of the fact and binding upon the company. The only effect such an act or resolution could have, if any, would be to shift the burden of proof from the State to the company. But the question would still be a question of fact between the State and the company, to be determined, if disputed, as all other like questions are determined, that is, by resort to the judicial tribunals of the State.

The fourth cause of error assigned is that, "the condition upon which the taxing powers might lawfully be exercised over their subject not having yet happened, or not having been declared to have happened by legislative act or authority, your petitioner was not bound to make the return required by the 52d section of the act of December 3d, 1863, providing for the assessment of taxes, and the act of the assessor of Marshall county in charging and assessing your petitioner with taxes for want of such return was unauthorized and void, in plain violation of the rights secured to your petitioner by its charter and in contravention of the constitution of the United States."

As to the questions raised by this assignment of error it has already been shown that the condition upon which the taxing power might be exercised had happened, and that no legislative declaration of the fact could be binding upon the company.    So that there was no violation of the charter of the company in assessing and charging the taxes assessed and charged as contended by the petitioner.

The fifth cause of error assigned is that, "before dissolving the injunction the court should have directed a reference to a commissioner, or an issue to be heard by a jury, for the purpose of ascertaining whether the net income of the road had exceeded the rate of six per cent per annum upon the capital invested in the State of Virginia, or West Virginia, prior to the 1st of February, 1864, or otherwise, and until a report or verdict in the affirmative the said injunction should have been continued."

This assignment of error is based upon the supposition that the net income of the road must exceed six per centum upon the capital invested on said road in this State, which, as has been before stated, is not the correct construction. There could have been no necessity for a reference or an issue to ascertain the net income of the road, for that sufficiently appeared to the court from the facts in the case.

The sixth and last cause of error assigned is that, "if the property and profits in the hands of your petitioner belonging to the stockholders of the company was liable to taxation at all, it was only liable under the 7th section of the act of March 6th, 1847, to *general* taxation for State purposes which might be equal and uniform and was not liable to *local* taxation for county purposes, which might be special and therefore unequal and unjust.    And so the said circuit court should at least have restrained the collection of the heavy levies for county purposes, made by the supervisors of said county, if it was rightfully dissolved as to the State and school taxes claimed on the part of the State."

The point raised in this assignment of error depends upon the meaning of the word *general* as used in the 7th section of the act of 1847.    It may be assumed that if the

word general had not been used in the section there would be no difficulty about its meaning.

This section takes the place of that part of the 18th section of the original charter, heretofore quoted, so far as there is any disagreement between them.

That part of the 18th section of the original charter referred to, has been held by the court of appeals of the State of Maryland, to exempt all the property of the company of every description from taxation. *The Mayor and City Council of Baltimore* vs. *The Baltimore and Ohio railroad company,* 6 Gill Rep., 288.

It is not necessary now to express my opinion in relation to this decision as it can have no material bearing here, nor could it have if different from what it is. But assuming that the exemption of the shares of the capital stock of the company from any tax may be construed to exempt the property from taxation under the original charter, what is to be the effect of the act af 1847?

The words of the orignal charter are, "the shares of the capital stock of the said company" shall be exempt from any tax, while the words of the act of 1847 are, "the stock, property and profits of said company" shall be subject to general taxation. Whatever may be the extent of the exemption from taxation under the original charter it is plain that under the act of 1847, whenever a liability to taxation exists it extends to the property of the company, so far as the same may be or accrue within this State.

Nor does the word *general,* or the phrase "general taxation," as used in the act, qualify the right of taxation or limit it to a particular kind of taxation? The petitioner claims such limitation, and that if it be liable to any taxation it is only liable to general taxation for State purposes and is not liable for local or county taxes.

The power to tax all property within a State for the support of government is a right existing in all governments, and essential to their existence.

If the property in this case were owned by a natural person upon the ordinary conditions of ownership there could

be no question as to its liability for the taxes imposed upon it. *Providence Bank* vs. *Billings & Pittman,* 4 Peters, 563.

The Baltimore and Ohio railroad company is an artificial person, invisible, intangible, but existing in contemplation of law. Being the mere creature of the law, it possesses only such powers as its charter confers upon it either expressly or as incidental to its existence.

Among the powers of the company conferred by its charter is that of purchasing and holding property for its necessary purposes. By virtue of the power conferred by its charter it does hold the property on which the taxes in this controversy are charged, and this property is just as much liable to taxation when owned by the company, an artificial person, as if owned by a natural person, unless it be exempted from taxation in whole or in part by the charter of the company.

Whenever the right to tax the property of the company exists at all, the right exists to tax it for the same purposes and to the same extent that the same property might be taxed if it belonged to a private or natural person, unless this right is limited by the word *general* in the amended charter, as it is contended that it is. To give to the word its plain literal signification its meaning is exactly the reverse of that contended for. The definition of the word *general* found in Burrill's Law Dictionary is, "that which comprehends all, the whole, as distinguished from *special* which signifies something designed for a particular purpose."

There can be no good reason why the word shall not have its usual signification and not be held to be a limitation on the taxing power.

In the case of the *Stourbridge Canal* vs. *Wheely and others,* in 2 Barnwell & Adolphus, 793, it was held that, "the canal having been made under an act of parliament the rights of the plaintiffs are derived entirely from that act. This, like many other cases, is a bargain between a company of adventures and the public, the terms of which are expressed in the statute, and the rule of construction in all such cases

is now fully established to be this, that any ambiguity in the terms of the contract must operate against the adventurers and in favor of the public, and the plaintiff can claim nothing that is not clearly given them by the act."

In the case of *The Philadelphia and Wilmington Railroad* vs. *The State of Maryland*, 10 Howard, 393, Chief Justice Taney delivering the opinion of the court, uses this language: "This court, on several occasions, has held that the taxing power of a State is never presumed to be relinquished unless the intention to relinquish is declared in clear and unambiguous terms."

In the case of *The Ohio Life Insurance and Trust Company* vs. *Debolt*, 16 Howard, 416, Chief Justice Taney uses the following language in delivering the opinion of the court: "The grant of privileges and exemptions to a corporation are strictly construed against the corporation and in favor of the public. Nothing passes but what is granted in clear and explicit terms. And neither the right of taxation nor any other power of sovereignty which the community has an interest in preserving undiminished, will be held by the court to be surrendered, unless the intention to surrender is manifested by words too plain to be mistaken."

In the recent case of *The Jefferson Branch Bank* vs. *Skelly*, 1 Black., 436, Judge Wayne used the following language: "The rule of construction in such case is that, the grant of privileges and exemptions to a corporation is to be strictly construed against the corporators and in favor of the public; that nothing passes but what has been granted in clear and explicit terms, and that neither the right of taxation nor any other power of sovereignty will be held by this court to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken."

The principles announced in these cases are the well settled rules of construction in the class of cases to which they apply, of which the case under consideration is one. And if there remained any doubt as to the extent of the power of taxation when construed according to the literal import of the terms used, when construed in the light of these rules

of construction there remains no doubt but what the property of the company whenever liable to any taxation, is liable to all taxation or to both State, county and other local taxation for the same purposes and to the same extent that other property may be taxed, and that the right to assess the taxes assessed for county as well as for State purposes, and in dispute in this case, is not prohibited by the 7th section of the act of 1847, nor by any other provision in the charter of the company.

The court below did not, for any of the causes assigned, or for any other apparent cause, commit any error in rendering the decree complained of, and the same will have to be affirmed with damages and costs to the appellees.

The President concurred.

JUDGMENT AFFIRMED.