STATE OF MARYLAND *vs.* THOMAS WILSON, PRESIDENT
OF THE BALTIMORE CEMETERY COMPANY.

*Capital Stock of a Corporation—Taxation—Exemption from
taxation—Taxable and Non-taxable property of a Cemetery
Company.*

It is the settled law of this State, that the capital stock of a corpora-
tion is, for the purpose of taxation, the representative of its prop-
erty, and the exemption of the one carries with it the exemption
of the other.

An exemption from taxation exists only where it is expressed in ex-
plicit terms, and it cannot be extended beyond the plain meaning
of those terms.

The charter of a Cemetery Company entitled to hold real and per-
sonal property, provided that the "land of the company dedicated
to the purposes of a cemetery, shall not be subject to taxation of
any kind." HELD :

1st. That this embraces the land with the permanent improvements
thereon, but not a fund invested in stocks, the interest of which is
devoted to the maintenance of the cemetery.

2nd. That its capital stock being, therefore, represented by non-tax-
able real estate, and taxable personal property, is taxable to the
extent that the taxable element enters into and forms part of its
value, and to that extent only.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MIL-
LER, ALVEY, ROBINSON and IRVING, J.

*John H. Handy* and *Charles J. M. Gwinn, Attorney-General,* for the appellant.

*William A. Fisher,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The appeal in this case is from a *pro forma* order dismissing a petition for a *mandamus* to compel the President of the "Baltimore Cemetery Company," to pay to the Treasurer, State taxes assessed upon the *capital stock* of that Company for the years 1872 to 1875 inclusive. The shares of stock were assessed by the Comptroller at their par value of $100 each. The Company insists that its capital stock is exempt from taxation by reason of the exemption of its *property* contained in its charter. The answer relies upon this defence, and also insists that the assessments were grossly in excess of the value of the shares. By the Acts of 1867, ch. 341, sec. 2, and 1874, ch. 483, sec. 3, "all grave-yards, cemeteries, and burying grounds" were exempted from taxation, but the answer makes no reference to these laws, and it is clear they confer no broader exemption than that contained in the Company's charter. Nor has the Act of 1876, ch. 260, anything to do with this case. Under that Act the *property* of the Company was assessed for *subsequent* taxation, and in the case of *The Appeal Tax Court of Baltimore City vs. The Baltimore Cemetery Company,* 50 *Md.,* 432, the question was whether certain permanent improvements upon the Company's land were within the exemption contained in its charter, and it was held that the exemption necessarily included not only the land, but also the permanent improvements thereon, which formed part of the realty, and were used for the purpose of a public cemetery, and which were essential to the use and enjoyment of the land for the purpose contemplated by the charter. In the present case the *capital stock* of the Company has been assessed

and taxed for the four years prior to the passage of the Act of 1876, and an entirely different question arises.

It has been too well settled in Maryland, by the repeated decisions of this Court, to admit of further discussion, that, for the purpose of taxation, the capital stock of a corporation is the representative of its property, that both cannot be taxed, and that the exemption of the one carries with it the exemption of the other. We must inquire then how far the stock of this corporation is represented by non-taxable or taxable property. Its charter is the Act of 1849, ch. 71, and as this law was passed prior to the adoption of the Constitution of 1851, its provisions are, of course, not subject to alteration or repeal by the Legislature.

By this Act the corporation which it creates was clothed with power to purchase, and hold *land*, not exceeding one hundred acres, for the purpose of a public cemetery, also to receive gifts and bequests for the purpose of improving and ornamenting the same, and to hold such *personal property* as may be requisite to carry out the object of the Act. It further provides that the capital stock of the Company shall be represented by one thousand shares, of one hundred dollars each, divided among the proprietors according to their respective interests, and transferable in such manner as the By-Laws may direct. It is then, by sec. 7, enacted, "that burial lots in said Cemetery shall not be subject to the debts of the lot-holders thereof, *and the land of the Company dedicated to the purposes of a Cemetery shall not be subject to taxation of any kind.*" By section 9, it is provided "that annually, on the first days of January and July after the year 1851, the sum of $250 shall be set apart out of the proceeds of the sale of lots and burial fees, which the President and managers shall invest in some safe and productive fund, the interest of which shall be payable semi-annually or annually, which interest, when received, is again, as early as prac-

ticable, to be invested, until the said semi-annual appropriations and accruing interest shall form a principal sum of $50,000, and the interest thereafter accruing shall be devoted exclusively to the maintenance of said cemetery in good order."

Applying then the settled principles of construction in such cases, that an exemption from taxation can exist only where it is expressed in explicit terms, and that it cannot be extended beyond the plain meaning of those terms, it is clear that the exemption in this Act embraces only "the land of the company dedicated to the purposes of a cemetery," with the permanent improvements thereon before referred to, and does not extend to or embrace any "personal property" it may own, nor the "fund" mentioned and provided for in the ninth section. Now the answer admits that besides this real estate, the company owns investments in various stocks amounting to about $19,000, constituting in part the fund required by the ninth section, and avers that it has no other property. These investments, as we have said, are not within the exemption. We have then a case in which the capital stock of a corporation is represented by, and its value consists in part of, non-taxable real estate, and in part of taxable personal property. It follows that the stock is taxable to the extent that this taxable element enters into, and forms part of its value, and to that extent only.

The State, therefore, having the right to tax this stock, for three years, to the extent indicated, the only other question is, how shall the order appealed from, which dismisses the petition, be disposed of? The petition sets out the assessment of the stock for each year at its par value, and the amount of the tax upon the basis of such assessment, and prays for a *mandamus* to compel payment of that sum. It is apparent from what we have said, that this amount cannot be recovered. There must be a new assessment on the principle stated, and as it is very doubt-

41                    v. 52.

ful whether the petition could be amended, so as to set forth such new assessment when made, it seems to us best, (without meaning to establish any precedent upon the subject,) to affirm the order, without prejudice to the right of the appellant to proceed with a new assessment, and to collect the tax thereunder by another application for a *mandamus* or otherwise. This mode of disposing of the order, in case the Court should determine that the stock was taxable to any extent, meets the views, as we understood them, of counsel on both sides expressed in the argument. It will therefore be adopted.

<em>Order affirmed<br>without prejudice.</em>

(Decided 17th December, 1879.)