# CHARLESTON.

MOUNTAIN VIEW CEMETERY COMPANY *v.* L. C. MASSEY, *Sheriff, etc.*

(No. 6783)

Submitted October 8, 1930. Decided October 14, 1930.

*Price, Smith & Spilman* and *J. M. Woods,* for appellant.
*Jno. T. Simms* and *T. C. Townsend,* for appellee.

474

MAXWELL, JUDGE:

Since 1910, the plaintiff has been and is now the owner of 15.88 acres of land in an outlying section of the city of Charleston. Of said tract, about three acres on the northern side have been laid off into burial lots with suitable avenues and walks. About fifty of these lots have been sold and about sixty bodies have been buried therein. The residue of about twelve acres is held in reserve by the owner for cemeterial purposes, it being suitable for such use except one or two acres on a declivity at the southern side. The entire enterprise is for profit on the part of the owner.

Beginning with 1923, the entire tract has been assessed for taxation. It was later returned delinquent for non-payment of taxes for said year and subsequent years and was advertised for sale by Massey, sheriff.

The object of the suit is to enjoin the sheriff from making sale of said tract or any part thereof. The trial chancellor held "that only such lots and parcels of land as have been actually sold and disposed of by the plaintiff to others for burial purposes are exempt from taxation"; and that inasmuch as the plaintiff has not sought in accordance with law a reduction of its acreage on the land books of the county because of the sale of certain portions thereof to others for burial purposes, the temporary injunction should be dissolved and the bill dismissed. This was accordingly done and the plaintiff appeals. Under the trial chancellor's decree, as it now stands, the sheriff is at liberty to sell the whole of the tract.

Section 1, of Article X of the Constitution, after providing for the equal and uniform taxation of all property throughout the state, provides further: "But property used for educational, literary, scientific, religious or charitable purposes; all cemeteries and public property may, by law, be exempted from taxation." Code, chapter 29, section 57, (too long to quote at length) exempts from taxation "All property, real and personal, described in this section, and to the extent herein limited." Numerous classes of property are enumerated, among them "cemeteries." Though limitations are made in the statute as to many of the enumerated classes, none are ex-

pressly applicable to cemeteries, and the grammatical construction is such that it would be a forced construction that would apply to cemeteries qualifying or limiting words that appear in conjunction with other classes. The word "cemeteries" stands alone. In discussing the above constitutional provision in *Reynolds* v. *Memorial Hospital*, 78 W. Va. 685 JUDGE MASON said: "Whether or not property may be exempted from taxation under this section depends on the use to which it is applied, except that 'cemeteries and public property', may be exempted by law without regard to their use; they are specifically named, and may be exempted by law." It is argued that this is obiter. Possibly so, but it is nevertheless a correct analysis of the constitutional section under discussion. What is meant by cemeteries as thus referred to in both the constitution and the statute? Were only certain kinds of cemeteries included or were all included? On behalf of the sheriff, it is argued that the law refers only to the kind of cemeteries generally in existence at the time of the adoption of the constitution and the enactment of the statute, about fifty years ago; the churchyard burial plot, the family graveyard, the burial places set aside by municipalities, benevolent societies and public spirited citizens; that commercially owned and operated cemeteries were not intended to be included by the people in adopting the constitution nor the legislators in enacting the statute. It is difficult to reconcile this proposition with the fact that as early as 1856 the legislature of Virginia authorized the incorporation of joint stock companies for cemeterial purposes. Acts of Virginia Legislature 1855-1856, chapter 36, section 1 and 4. Such has been the law of this state from the beginning. Code of 1868 (sometimes called Code of 1870), chapter 54, section 2; Code, 1923, same chapter and section. If cemeteries owned and operated for profit were not then in actual existence, it is certain from the statutory provisions cited that such organizations were contemplated. Our constitution (1872) was adopted after that time. And then, too, the law is not a mere passive, stagnant entity, lagging forever behind the progress of human events and not susceptible of application to new situations although admittedly within the class dealt with by the statute when

it was enacted or the constitutional provision at the time of its promulgation. Rather is the law a living, vital thing not helpless to deal with new phases of old matters simply because the new things are not enumerated, but reaching out to embrace within its letter that which is clearly within its spirit.

But it is argued that in the absence of a showing in the record that the plaintiff has undertaken and is obligated to give perpetual care and upkeep to the cemetery, it should not be exempt from taxation on portions of the property which have not been sold to individuals for burial lots, because, it is said, the company may abandon the property and give it no further attention in upkeep or otherwise when it has sold the property all out in lots or even before that time if its officers should decide that it would not be profitable to continue the expense of upkeep pending the sale of the remaining lots; or, even, that they might divert unused portions to other uses. However these things may be, the matter of meeting such situations is one of legislative policy, not one for judicial determination. The statute exempts ''cemeteries''. On what basis of justification can the courts say that only a particular kind was intended?

Recurring now to the suggestion that only the portions of a cemetery property which have been actually sold should be exempt from taxation, it will be observed that such construction of the statute might easily result in gross hardship in its operation. Portions assessed for taxation for a given year might very well be sold within a short time after assessment and actually put in use for burial purposes. If the tax were not paid, these very lots with dead bodies therein would be subject to sale to satisfy the tax. The argument that this is not likely to happen does not meet the situation. It is not the policy of a great commonwealth to be parsimonious in its dealings with its people, and least of all where the tender sentiments attending the place of sepulchre of their dead is involved. The state should eschew and scorn a policy that will even carry the possibility of harrassment of bereaved survivors with reference to the last resting place of departed loved ones, or that might disturb the repose of the dead. The tender consideration which the law effectuates in the protection of the

dead is forcefully demonstrated in the decision of this court in *Ritter* v. *Couch*, 71 W. Va. 221. Note particularly JUDGE BRANNON's eloquent opinion in that case.

There is a general rule that statutory tax exemptions are to be strictly construed. But, even so, a strict construction must be reasonable and not limited so as to defeat the underlying purpose of the statute. A construction that would make possible the sale for taxes of occupied burial lots is not reasonable and is not in accord with the purpose of the law. Of course, the setting aside of any acreage for cemeterial purposes, whether commercial or eleemosynary, must be predicated on good faith, and the acreage set aside or reserved for future use must not be disproportionate in extent to the population of the community to be served and a reasonable expectation of the service to be rendered. There is nothing in the instant record to indicate bad faith in any particular on the part of the plaintiff, nor can we say that a cemetery of 15.88 acres is disproportionate to the necessities of the rapidly growing city of Charleston with its present population of more than 60,000, even though there may be other available burial places.

Substantial authority sustains our position. ''Cemeteries are usually exempted from taxation without regard to the ownership of the cemetery or the question whether the right of burial is limited to a particular class, or is open to the public generally, or whether burial lots are sold to individuals for the use of their families for a pecuniary consideration. One reason perhaps why cemeteries are exempt from taxation is the difficulty of collecting a tax thereon and the obvious impropriety of selling the graves of the dead in order to pay the expenses of carrying on the government of the living. The exemption is not, however, limited to property actually devoted to the burial of the dead, but includes whatever is essential for the use of the cemetery as such, including paths, ornamentation, and land within the cemetery limits acquired for but not yet actually used for the burial of the dead.'' 26 R. C. L., section 284. In *Hoboken* v. *North Bergen*, 43 N. J. L. 146, syl. 1 and 2 read: ''1. The general tax law exempts cemeteries from taxation. 2. Land within the boundaries of a

cemetery acquired for burial purposes, but not actually used therefor, is not taxable." And in the opinion the court said: "It is, however, contended that the exemption under the general law extends only to the land actually used for burial purposes, and that arable land within the boundaries of a cemetery, although adjoining the part occupied by graves, is liable to taxation. Such construction of the general act is too narrow. The space required for burial purposes constantly increases, and a reasonable quantity of land for future occupancy should be provided. Land acquired for such purpose is not taxable. Seventeen acres is not an unreasonable quantity of land for a cemetery in the vicinity of the city of Hoboken." There was a like holding in *Metairie Cemetery Association* v. *Board of Assessors*, 37 La. Annual Reports, p. 32. In *Georgia Mausoleum Co.* v. *City of Dublin*, (Ga.) 95 S. E. 233, wherein a certain mausoleum was held exempt from taxation, the court said: "While the private corporation was engaged in acquiring cemetery lots, and constructing mausoleums thereon for the purpose of pecuniary gain and profit to be derived from such business, the mausoleums, when constructed, were not used for purposes of private or corporate profit or income, but were used solely for the purpose of burying the dead. It is the use made of the property, and not the purchase and sale thereof, which determines the matter of taxation."

We reverse the decree of the trial chancellor and enter a decree here perpetually enjoining the defendant from selling the plaintiff's said property of 15.88 acres, or any part thereof, as delinquent for non-payment of taxes for the years 1923, 1924 or 1925, such being the assessments here involved.

*Reversed and rendered.*