IN RE: HILLCREST MEMORIAL GARDENS

(No. 12073)

Submitted April 18, 1961.          Decided May 16, 1961.

D. *Grove Moler,* for appellant.

*C. Donald Robertson, Attorney General, Edward B. Simms, Special Assistant Attorney General, Robert Bailey, Prosecuting Attorney,* Wyoming County, Pineville, for appellee.

CALHOUN, JUDGE:

The petitioner, Hillcrest Memorial Gardens, Inc., a corporation organized and existing under the laws of the State of West Virginia, has appealed to this Court from a final judgment of the Circuit Court of Wyoming County entered on August 20, 1960, affirming a prior order entered by the county court of that county on March 1, 1960, denying the prayer of the

petitioner that certain of its personal property be adjudged to be exempt from taxation by reason of the provisions of Code, 1931, 11-3-9, as amended. Apparently the proceeding is prosecuted pursuant to Code, 11-3-25, as amended.

On October 9, 1957, a certificate of incorporation was issued to the petitioner by the Secretary of State of West Virginia. The objects of the incorporation were, among others, to purchase and operate, "for burial purposes only", one or more cemeteries in Wyoming County, including maintenance of lots, vaults and chapels; to buy and to sell tombstones; to sell lots for grave plots for cash or on an installment plan; and to do all things necessary and incident to the maintenance and operation of a cemetery. Pursuant to its incorporation the petitioner maintains an office at Oceana, Wyoming County, including office furniture and equipment, for the keeping of its records and for the purpose of conducting corporate business. The petitioner also owns, maintains and operates at Matheny in the same county "a cemetery plot of ground" known as Hillcrest Memorial Gardens. It has sold lots for burial purposes in such cemetery to various individuals, some sales having been for cash and others on an installment plan.

In relation to the property alleged to have been improperly assessed for tax purposes, the petition filed herein states:

"That the Assessor of Wyoming County, West Virginia, secured a signed 'Return of All Personal Property and Real Estate Owned' from the petitioner for the calendar year 1958, upon the face of which it appears that (a) the amount of money on hand or deposit, January 1, 1958, was $400.00, (b) the total of notes and accounts receivable (representing the sale of cemetery lots on an instalment plan) was $70,486.00, and (c) the value of office furniture, fixtures and equipment $500.00.

"That all of said described personal property was properly listed upon the records of the Assessor of Wyoming County, West Virginia.

"That your petitioner made no return for taxes of its money, notes and accounts receivable for the calendar year 1959, but that the Assessor of Wyoming County, West Virginia prepared and filed in his own office an unsigned 'Return of All Personal Property and Real Estate Owned' by Hillcrest Memorial Gardens, as of January 1, 1959, upon the face of which it appears that (a) the amount of notes and accounts receivable (representing the sale of cemetery lots on an instalment plan) was $180,000.00 (the Assessor's estimate,) and (b) the value of office furniture, fixtures and equipment was $1,500.00 (the Assessor's estimate.)

"That said Assessor over the informal protest of your petitioner, who claimed said property as exempt from assessment and taxation by virtue of the provisions of Section 9, Article 3, Chapter 11, Code of West Virginia, 1955, as amended, illegally assessed taxes upon said property for 1958 as follows, to-wit: upon $70,485.00 listed as Class No. 1, personal property, $231.21, and upon $500.00 listed as Class 3-4, personal property $6.56, for each half year and for 1959 as follows, to-wit, upon $180,000.00 listed as Class No. 1, personal property, $838.71, and upon $1,500.00, listed as Class 3-4, personal property $27.96, for each half year."

Separate petitions were filed in the county court for the years 1958 and 1959, respectively. On the joint motion of counsel for the petitioner and the prosecuting attorney in the circuit court, the two proceedings were "combined and consolidated for further proceedings, the same as if one proceeding only."

Section 1 of Article X of the Constitution of West Virginia provides that certain property as therein specified "may by law be exempted from taxation." A portion thereof, with emphasis supplied, is as follows: "Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, *and all property, both real and personal, shall be taxed* in proportion to its value to be ascertained as directed by law. * * * but property used for educational, literary, scientific, religious or charitable purposes, *all cemeteries*, public property * * * *may*

*by law be exempted from taxation."* For discussions
of the historical background of this constitutional pro-
vision, see a scholarly article by Albert A. Abel, 55
W. Va. Law Rev., 170, and *State v. Kittle,* 87 W. Va.
526, 531, 105 S. E. 775, 776.

In *State v. Kittle,* 87 W. Va. 526, 533, 105 S. E. 775,
777, the Court stated: "The Constitution, however,
does not of itself exempt any property from taxation.
It merely authorizes legislative exemption thereof."
Pursuant to the constitutional authorization, the legis-
lature, by Code, 1931, 11-3-9, as amended, has provided
for certain exemptions as follows: "All property, real
and personal, described in this section, and to the
extent herein limited, shall be exempt from taxation,
that is to say Property belonging to the United States,
other than property permitted by the United States to
be taxed under state law; property belonging exclusive-
ly to the State; property belonging exclusively to any
county, district, city, village or town in this State, and
used for public purposes; property located in this
State belonging to any city, town, village, county or
any other political subdivision of another state, and
used for public purposes; property used exclusively
for divine worship; parsonages, and the household
goods and furniture pertaining thereto; mortgages,
bonds and other evidence of indebtedness in the hands
of bona fide owners and holders hereafter issued and
sold by churches and religious societies for the purpose
of securing money to be used in the erection of church
buildings used exclusively for divine worship, or for
the purpose of paying indebtedness thereon; *cem-
eteries;* property belonging to, or held in trust for,
colleges, seminaries, academies and free schools, if
used for educational, literary or scientific purposes,
including books, apparatus, annuities, money and fur-
niture; * * * Provided, however, that the property,
both real and personal, which is exempt from taxation
by this section shall be entered upon the assessor's
books, together with the true and actual value there-
of, but no taxes shall be levied upon the same or ex-

tended upon the assessors's books.'' (Italics supplied.)

While we must look to the Constitution to determine the extent of legislative authority to provide for exemption of property from taxation, we must look to the statute itself to determine the extent to which the legislature has exercised such authority. Certain well-established legal principles are available to guide us in interpreting the constitutional and statutory language dealing with the question herein presented. In Section 1 of Article X of the Constitution, significance must be attached to the words: ''* * * all property, both real and personal, shall be taxed * * *.'' Taxation of all property, both real and personal, is the general rule fixed by constitutional mandate, while exemption from taxation constitutes the exception. 84 C.J.S., Taxation, Section 225, page 431. ''Under the Constitution of this state all property both real and personal shall be taxed except such property as the Legislature may exempt under the exceptions contained therein.'' *Reynolds Memorial Hospital v. County Court of Marshall County*, 78 W. Va. 685, pt. 1 syl., 90 S. E. 238. See also *Central Realty Co. v. Martin*, 126 W. Va. 915, 920, 30 S. E. 2d 720, 723; *In re Tax Assessments Against Hancock County Federal Savings and Loan Association*, 125 W. Va. 426, pt. 1 syl., and page 433, 25 S. E. 2d 543, 547; *State v. McDowell Lodge No. 112, A. F. & A. M.*, 96 W. Va. 611, 613-14, 123 S. E. 561, 562; *State v. Kittle*, 87 W. Va. 526, 529, 105 S. E. 775, 776; *Chesapeake & Ohio R. Co. v. Miller*, 19 W. Va. 408, pt. 4 syl., and page 436, affirmed in 114 U.S. 176, 5 S. Ct. 813, 29 L. ed. 121, and cited in *Clarksburg etc. v. Morris*, 76 W. Va. 777, 779, 86 S. E. 893, 894. ''The constitutional and statutory provisions exempting property from taxation are strictly construed.'' *Central Realty Co. v. Martin*, 126 W. Va. 915, 920, 30 S. E. 2d 720, 724. See also *State v. Kittle*, 87 W. Va. 526, pt. 3 syl., 105 S. E. 775; 84 C.J.S., Taxation, Section 227, page 437. ''It is a rule so well established as to need no citation of authority, that

it is encumbent upon the person who claims his property as exempt from taxation to show that the use of that property clearly falls within the exception. The rule of strict construction applies; and if any doubt arises as to the exemption, that doubt must be decided against the person who claims the exemption." *State v. McDowell Lodge, etc.,* 96 W. Va. 611, 614, 123 S. E. 561, 563. See also *Cornett's Executors v. Commonwealth,* 127 Va. 640, 646, 105 S.E. 230, 232; *National Cemetery Ass'n v. Benson,* 344 Mo. 784, 129 S. W. 842. In the seventh point of the syllabus of the case of *Baltimore & Ohio Railroad Co. v. The Supervisors and Sheriff of Marshall County,* 3 W. Va. 319, the Court stated that "the right of taxation will not be held to be surrendered unless the intention to do so is manifested by words too plain to be mistaken." To the same effect see *Probasco et al v. Town of Moundsville,* 11 W. Va. 501, pt. 2 syl.

The statute now under consideration was reenacted in 1957, and such enactment governed the tax assessments for the years 1958 and 1959. Acts of the Legislature, Regular Session, 1957, Chapter 156. While such is not material in the instant case, the statute was reenacted in 1961. As the statute appeared prior to the 1957 reenactment, the word "cemeteries" was preceded by a semicolon and immediately followed by a comma. In the 1957 reenactment, the word is set off by semicolons, one preceding and one following. The semicolon preceding is perhaps of greater significance, because it shows clearly a legislative intent to leave the word "cemeteries" standing alone, unqualified by prior language. In the earlier portion of the statute are found the following words: "Property belonging to the United States;" "property belonging exclusively to the State;" "property belonging exclusively to any county;" and "property used exclusively for divine worship." "The word 'property' * * * embraces both real and personal estate." Code, 1931, 2-2-10(r). In relation to the manner in which the word "cemeteries" is set apart in the statute, the Court, in the

case of *Mountain View Cemetery Co. v. Massey,* 109 W. Va. 473, 474, 155 S. E. 547, 548, stated: "Numerous classes of property are enumerated, among them 'cemeteries'. Though limitations are made in the statute as to many of the enumerated classes, none are expressly applicable to cemeteries, and the grammatical construction is such that it would be a forced construction that would apply to cemeteries qualifying or limiting words that appear in conjunction with other classes. *The word 'cemeteries' stands alone."* (Italices supplied.) The word "cemeteries" is similarly set apart in the language of the Constitution, but by commas rather than by one or more semicolons. The statute expressly specifies various types of personal property which shall be exempt, including that embraced in the phrase, "parsonages, *and* the household goods and furniture pertaining thereto." (Italics supplied.) We note that the statute does not state, as it does in other connections, that "property of" or "property belonging to" cemeteries shall be exempt from taxation; nor does it state that "cemeteries and personal property pertaining thereto" shall be exempt. It would seem, therefore, that the situation calls for a determination of the meaning of the word "cemeteries."

Apparently by universal acceptation, the word "cemetery" denotes real estate only as distinguished from personal property. It is defined by Black's Law Dictionary (4th Ed.) as: "A graveyard; burial ground. * * * Place or area set apart for interment of the dead." It is defined in Webster's New International Dictionary (2d Ed.), as: "A place or ground set apart for the burial of the dead." "A cemetery is a place where the dead bodies of human beings are buried; it is a place or area of ground set apart for the burial of the dead, either by public authority or private enterprise. The term is synonymous with graveyard, burial ground, and place of burial, and it includes not only lots for depositing the bodies of the dead, but also such avenues, walks, and grounds as may be

necessary for its use or for ornamental purposes. The term 'graveyard' is also defined as a place for the burial of the dead." 14 C.J.S., Cemeteries, Section 1, page 63. "A cemetery is a place set apart, either by municipal authority or private enterprise for the interment of the dead. The term includes not only lots for depositing the bodies of the dead, but also avenues, walks, and grounds for shrubbery and ornamental purposes." 10 Am. Jur., Cemeteries, Section 2, page 487.

From at least as early as 1917 until 1945 the statute in question provided for exemption from taxation of trust funds held for the benefit of cemeteries as follows: "* * * That such exemption from taxation shall apply to all property, including the principal thereof, and the income therefrom, held for a term of years or otherwise under a bona fide deed of trust, transfer or assignment, by a trustee or trustees required by the terms of such trust to apply, annually, the income derived from such property to education, religion, charity and *cemeteries,* when not used for private purposes or profit." (Italics supplied.) By Chapter 143, Acts of the Legislature, Regular Session, 1945, the legislature eliminated such language from the statute, leaving therein no reference whatsoever to cemeteries other than the word itself, separated and set off by semicolons; and substituted the final paragraph of the statute as it appears in its present form as follows: "Notwithstanding any other provision of this section, however, no language herein shall be construed to exempt from taxation any property owned by, or held in trust for, educational, literary, scientific, religious or other charitable corporations or organizations, unless such property is used primarily and immediately for the purposes of such corporations or organizations." The legislature thereby eliminated from the statute a provision for exemption from taxation of funds held for the benefit of cemeteries as therein prescribed. We must presume that it did so deliberately and with the purpose of effecting a change

in the previously existing law. *State v. General Daniel Morgan Post,* 144 W. Va. 137, 107 S. E. 2d 353, 358; *Hall v. Baylous,* 109 W. Va. 1, pt. 2 syl., 153 S. E. 293, 69 A.L.R. 527. The fact of this change in the statute, we believe, must be given due weight in the intepretation and application of the statute in its present form.

Apparently the precise question presented is one of first impression in this state. The case of *Mountain View Cemetery Co. v. Massey,* 109 W. Va. 473, 155 S. E. 547, related to real estate only. The Court held therein that unsold portions of the cemetery reserved for interment purposes were exempt from taxation as a part of the cemetery if held in good faith and not disproportionate in extent. The Court did, however, imply that the word "cemetery" refers to real estate only to the extent that the Court quoted 26 R.C.L., Taxation, Section 284, page 325, as follows: "Cemeteries are usually exempted from taxation without regard to the ownership of the cemetery or the question whether the right of burial is limited to a particular class, or is open to the public generally, or whether burial lots are sold to individuals for the use of their families for a pecuniary consideration. One reason perhaps why cemeteries are exempt from taxation is the difficulty of collecting a tax thereon and the obvious impropriety of selling the graves of the dead in order to pay the expenses of carrying on the government of the living. The exemption is not, however, limited to property actually devoted to the burial of the dead, but includes whatever is essential for the use of the cemetery as such, including paths, ornamentation, and land within the cemetery limits acquired for but not yet actually used for the burial of the dead."

In the case of *Hollywood Cemetery Co. v. Commonwealth,* 123 Va. 106, 96 S. E. 207, the court reluctantly and regretfully held that an endowment fund lawfully held by a cemetery maintained for the burial of deceased Confederate soldiers was not embraced by the words "burying grounds" and, therefore, not exempt from taxation. The court stated at

page 209 of 96 S. E.: "This court, however, is not permitted to indulge either its sentiment or sympathy for the purpose of relieving the company from the burden which the Constitution has clearly imposed upon it as well as upon the other owners of property in the commonwealth." As a consequence of that decision, the Constitution and the statute were changed. See *Commonwealth v. Trustees Evergreen Burial Park,* 176 Va. 9, 12, 10 S. E. 2d 495, 496. As changed, the language of the exemption was as follows: "(c) Private or public burying grounds or cemeteries and endowment funds, lawfully held, for their care, provided the same are not operated for profit." It was, nevertheless, held in the case referred to immediately above that money, bonds, and notes constituting a fund for perpetual care of the cemetery were subject to taxation. The court stated: "Here the income, in part at least, is to meet expenses which the cemetery has to incur if it is to succeed. To succeed, it must grade its lands, set out trees and shrubbery, and do such things as would induce prospective purchasers of lots to select them as burial places for their dead. * * *. And so we have in substance trusts set up by them for their own benefit. Income is not set apart for the upkeep of lots sold; in express terms it is to be used for general purposes, and so it becomes an inducement to others to purchase, which, in turn, increases their profits. They are necessarily beneficiaries of their own trust."

Following is a list of cases holding that various items of personal property belonging to cemeteries were not exempt from taxation even though the cemeteries themselves were exempt therefrom: *State of Maryland v. Wilson, President of the Baltimore Cemetery Co.,* 52 Md. 638, (a fund, the interest of which was devoted to the maintenance of the cemetery); *State ex rel. Mount Mora Cemetery Ass'n v. Casey,* 210 Mo. 235, 109 S. W. 1, (personal property, including proceeds of sale of cemetery lots); *Rosedale Cemetery Assn. v. Linden Township,* 73 N.J.L. 421, 63 A.

904, (horses, hearses, carriages, agricultural implements, tools and other articles used exclusively in and about cemeteries) ; *Commonwealth v. Lexington Cemetery Co.*, 114 Ky. 165, 70 S. W. 280, (funds derived from sale of lots) ; *Town of Milford v. Commissioners of Worchester County*, 213 Mass. 162, 100 N.E. 60, (unspecified personal property) ; *People v. Elmwood Cemetery Co.*, 317 Ill. 547, 148 N.E. 273, (stock of cemetery corporation) ; *Oak Ridge Cemetery Corp'n v. Tax Commission*, 299 Ill. 430, 132 N.E. 553, (capital stock and franchise.)

Both the constitutional provision and the statute are clear and unambiguous. A statutory provision which is clear and unambiguous and which plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect. *State ex rel. Lambert v. Carman*, 145 W. Va. 635, pt. 4 syl., 116 S. E. 2d 265 ; *State v. Jackson*, 145 W. Va. 51, pt. 3 syl., 112 S. E. 2d 452 ; *State v. General Daniel Morgan Post*, 144 W. Va. 137, pt. 5 syl., 107 S. E. 2d 353 ; *State v. Epperly*, 135 W. Va. 877, pt. 2 syl., 65 S. E. 2d 488. Likewise if a constitutional provision is clear in its terms, and the intention of the electorate is clearly embraced in the language of the provision itself, this Court must apply and not interpret the provision. *Appalachian Power Co. v. County Court of Mercer County*, 146 W. Va. 118, pt. 1 syl., 118 S. E. 2d 531 ; *State ex rel. Zickefoose v. West*, 145 W. Va. 498 ; Pt. 3 syl., 116 S. E. 2d 398 ; *Flesher v. Board of Review*, 138 W. Va. 765, pt. 2 syl., 77 S. E. 2d 890 ; *State ex rel. Trent v. Sims*, 138 W. Va. 244, pt. 3 syl., 77 S. E. 2d 122.

For the reasons stated herein, the judgment of the Circuit Court of Wyoming County is affirmed.

*Affirmed.*