# THE STATE ex rel. MOUNT MORA CEMETERY ASSOCIATION, Appellant, v. CASEY.

### Division Two, March 17, 1908.

1. **TAXATION: Certiorari.** A writ of *certiorari* will lie against the city assessor to determine the validity of an assessment made by him. In fixing the value of the property assessed he acts quasi-judicially, as he does also in attempting to assess at all property claimed to be exempt from taxation.

2. ————: ————: **Matters Considered.** The writ of *certiorari* brings up for review only the record of the assessor who made the assessment, and all verbal testimony as to serving the notice and blank assessment list upon the property-owner cannot be considered.

3. ————: **Exempt Property: Cemeteries.** The real estate of a cemetery company used for a burying ground is exempt from taxation. But the personal property of such company, such as the money derived from the sale of lots and horses and hearses, is not exempt, either of itself, or as an incident of the property positively declared to be exempt.

4. ————: ————: **Laws Rigidly Construed.** Laws exempting property from taxation are to be strictly construed, and the right of exemption must be established beyond a reasonable doubt. An exemption exists only where it is expressed in explicit terms.

5. ————: ————: **Cemeteries: Constitution.** Section 6 of article 10 of the Constitution, ordaining that 'the property, real and personal, of the State, county and other municipalities, and cemeteries shall be exempt from taxation" does not exempt the

State ex rel. v. Casey.

personal property of cemetery companies from taxation. The words "property, real and personal," in that section, are separated from, and have no connection with, the word "cemeteries." The exemption extends only to cemeteries as such.

6. ———: ———: ———: Charter: Money Used for Improvements. A clause in the special charter of the cemetery company providing that "after the payment of the present liabilities of said association and the reimbursement of the stockholders of the amounts of money they have advanced or may advance to purchase and improve said cemetery grounds now owned by said association, the residue of the income of said association, either from sale of lots or from any other source, shall be forever held, kept and used by said board of trustees and their successors for the sole and only purpose of improving, embellishing and preserving said cemetery grounds now owned and controlled by said association," cannot be construed as exempting the personal property of the association from taxation. It makes no reference to the subject of taxation, and that subject cannot be said to have been in the minds of the Legislature when the special charter was granted.

7. ———: Assessment: Public Notice. The statute which requires the city assessor to give public notice, in a newspaper and by handbills, to all property-owners, requiring them to deliver to him lists of their property, was enacted for the convenience of the assessor, to enable him to make his assessments with more expedition and accuracy, and his failure to comply with it does not invalidate the assessment.

8. ———: Lists to Taxpayer: Refusal. Where the assessor calls upon the secretary and president of the corporation and asks them to make out a list of its personal property and they decline to do so, he has complied with the law, and is authorized to make out the list upon the best information he can obtain, without stating the kind of personal property assessed.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

AFFIRMED.

*H. K. White* and *V. Pike* for appellant.

(1) Appellant is not subject to taxation. Constitution, article 10, section 6; Original charter, sec. 6; Amendment, sec. 2; Cooley on Taxation (3 Ed.), 263; Clinton v. Henry Co., 115 Mo. 557; St.

Louis v. Brown, 155 Mo. 545; Colson v. Cemetery Co., 15 S. W. 245; Oakland v. St. Paul, 36 Minn. 529; Stockton ex rel. v. Mayor, 9 Atl. 203.  (2)  The particular assessment complained of by relator in these proceedings is void for want of compliance with the law regulating the assessment of personal property in cities of the second class.  (a)  The notices required by section 5575, Revised Statutes 1899, were not shown to have been given by the assessor.  Cooley on Taxation (3 Ed.), pp. 484, 631-632; McTwiggin v. Hunter, 18 R. I. 776.  (b)  The whole evidence shows that the requirements of section 5579 were not complied with.  Cape Girardeau v. Buehrman, 148 Mo. 204; State ex rel. v. Cummings, 151 Mo. 57; State ex rel. v. Hoyt, 123 Mo. 348; Whitely v. Platte County, 73 Mo. 30; Railroad v. Young, 96 Mo. 41. (c)  The assessor had no right to place a return of service on the assessment list after his assessment book passed out of his hands.  State ex rel. v. Phillips, 102 Mo. 668; Johnson v. Mallory, 74 Cal. 430.  (d) The assessment list was void on its face for two reasons:  First.  It was unsigned by the assessor as required by the city ordinances.  Second.  It failed to show an assessment upon information, but showed an attempted assessment by estimation.  R. S. 1899, sec. 5579; McCormick v. Nebraska, 61 N. W. 99.

*W. B. Norris* and *O. E. Shultz* for respondent.

(1)  By the special charter granted to the appellant, neither its real nor personal property was exempt from taxation, except its land, not exceeding fifty acres, so long as it was used for the purposes of a cemetery.  Appellant cannot claim exemption from taxes levied upon its money and effects.  Sec. 9 of appellant's charter; State v. Nelson, 52 Md. 638; People ex rel. v. Cemetery Co., 86 Ill. 336.  (2)  Under the Constitution only cemeteries are exempt from taxation, and not corporations that may own cemeteries.

The words of the Constitution are "the property, real and personal, of the State, counties and other municipal corporations, and cemeteries shall be exempt from taxation." This clause must be strictly construed and those claiming exemptions under it must establish their right beyond a reasonable doubt. Fitterer v. Crawford, 157 Mo. 51; Rosendale Cemetery Assn. v. Linden Township, 63 Atl. 904. (3) The Constitution did not create any exemptions from taxation other than those already granted by special charters. It was not the purpose of the convention of 1875 to extend exemptions, but rather to curtail them. State ex rel v. Missouri Free School, 162 Mo. 332. (4) Appellant must by its evidence specifically bring itself within any exemption from taxation claimed by it. When the property may or may not be exempt, the evidence must clearly show its right to exemption. Adelphia Lodge v. Crawford, 157 Mo. 356. (5) The law presumes that the assessor performed his duty and properly assessed the property in question. State ex rel. v. Fullerton, 143 Mo. 682; State ex rel. v. Board of Education, 98 Mo. 362. (6) Where jurisdiction has attached in favor of the assessor, and this jurisdiction is given him by the charter and not by the ordinances of the city, all the provisions, both of the statute and the ordinances, are merely directory and not mandatory. The statute demands that all of the assessor's proceedings shall be liberally construed, including even the giving of the formal notice published in the newspaper. State ex rel. v. Bank, 120 Mo. 173; sec. 5635, R. S. 1899. (7) The notice by publication in a newspaper is not mandatory but directory. Sec. 5577, R. S. 1899. If there be no formal publication and the taxpayer delivers his list to the assessor, or, if after his failure to deliver such list, he is notified personally by the assessor the formal notice performs no function in giving the assessor jurisdiction. (8)

The assessor had the right, in assessing the personal property of appellant, to assess it at a lump sum, in the absence of a sworn statement, and, if incorrectly done, it was a mere irregularity. State ex rel. v. Cummings, 151 Mo. 94; sec. 5579, R. S. 1899. (9) Where the assessment roll has passed out of the hands of the assessor, as by delivering it to the common council, and he no longer has control of it, the *certiorari* is directed to the wrong party. 4 Ency. Pleading and Practice, pp. 142, 176, 177; State v. Howell, 24 N. J. L. 519; Iron Co. v. Town Clerk, 29 Wis. 444; Morris Canal, etc. v. State, 14 N. J. L. 430.

*H. K. White* and *V. Pike* for appellant in reply.

(1) Respondent was the proper person to whom the writ should have been directed. R. S. 1899, secs. 5575, 5579, 5581, 5582; Crawford v. Township Board, 22 Mich. 405; Davis v. Town of Harrison, 46 N. J. Law, 86; Milwaukee, etc., Co. v. Town Clerk, 29 Wis. 444. (2) No objection having been made in the court below, this error, if it ever existed, cannot be raised for the first time on appeal. People ex rel. v. McLean, 80 N. Y. 260.

BURGESS, J.—The relator applied to the circuit court of Buchanan county for a writ of *certiorari* to bring before that court the record of an assessment of personal property against the relator, for the year 1904, made by defendant, George F. Casey, assessor of the city of St. Joseph.

In its application relator set forth its incorporation under an act of the Legislature, passed in 1851, and an act amendatory thereof, passed in 1871. It alleged that under the act of incorporation and the Constitution of this State its property was exempt from taxation, that the assessment complained of had been made without notice to it, and that the assessment was irregular and void.

The writ was awarded, and the defendant filed his return, in which he admitted the corporate capacity of relator, and set forth the clause in its charter by virtue of which relator claimed exemption from taxation. He also averred that he had called at the office of relator, and found J. C. Hedenberg, secretary of the corporation, in charge thereof, to whom he tendered a list to be filled out and sworn to as the list of personal property owned by relator, as required by sections 5579 and 5580, Revised Statutes 1899, but that said Hedenberg refused to make out a list, and told defendant that J. C. Wyatt was president of the corporation and the proper person to make out said list; that thereupon he called upon said Wyatt and presented to him said list to be filled out, but that said Wyatt refused to fill out said list and to return the same.

Attached to the return was a notice and blank assessment list, which notice required the relator to make out and return to defendant, as assessor, a list of its personal property, the name of the defendant being appended to the notice in print. Said blank assessment list sets forth various classes of personal property, and at the head is a blank return of service by the assessor or his deputy, which was unsigned.

Defendant also attached to his return to said writ a copy of his assessment of relator's personal property, the same being set out at the foot of a blank assessment list as follows: "In the absence of sworn statement, the assessor's estimate $120,000."

Subsequently, the defendant filed an amended return, wherein in addition to the averments made in the original return, he sets forth that on February 17, 1904, availing himself of the best information he could get, he assessed the relator in the sum of $120,000, and made out a tax list accordingly. To the amended return were also attached a notice and blank assessment list and copy of defendant's assessment of relator's

property, the same being identical with those attached to the original return. Neither in the original nor the amended return is it shown that the assessor's name was signed to said assessment, the only signature being his printed name appended to the notice accompanying the blank list tendered as alleged, to relator. Attached to said assessment list, as set forth in the amended return, is the following:

"I hereby certify that I served this list on the 3rd day of February, 1904, by calling at the office of the Mount Mora Cemetery Association, 413 Francis Street, St. Joseph, Missouri, and offering a true copy hereof to J. C. Hedenberg as the secretary of said association, but he refused to receive the same, and referred me to J. C. Wyatt, the president of said association, as the proper person to be served with this list, and I thereupon and upon said date called upon J. C. Wyatt, the president of said Mount Mora Cemetery Association, at his office, Fifth and Felix streets, in St. Joseph, Missouri, and served upon him this list by delivering to and leaving with him a true copy thereof.

"GEO. F. CASEY, City Assessor."

Defendant further averred that he had placed his assessment on the assessment book, and affixed thereto his affidavit as city assessor, and delivered said book to the city council by delivering the same to the city clerk.

Neither the original nor the amended return averred that any general notice had been given in the newspapers of the assessment.

The relator filed its traverse to the defendant's return, which denied all the allegations of the return which were not admissions of the allegations contained in the application for the writ of *certiorari*, except that it admitted that defendant had placed the assessment on the tax book and affixed his affidavit as city assessor thereto.

210 Sup—16

Upon the trial of the case, relator introduced in evidence its charter and the amendments thereto, section nine of said charter being as follows:

"Said cemetery is hereby declared exempt from all taxes and assessments so long as the same shall remain dedicated to the purposes of a cemetery, except such sums as may be imposed by the board of trustees upon each lot sold for the improvement, advancement and uses of said lots, and to repair the enclosure, gateways, etc., of said cemetery."

Section 2 of the act amending said charter was as follows:

"That after the payment of the present liabilities of said association, and the reimbursement to the stockholders of the amounts of money they have advanced, or may advance, to purchase and improve said cemetery grounds now owned by said association, the residue of the income of said association, either from sale of lots or from any other source, shall be forever held, kept and used by said board of trustees and their successors, for the sole and only purpose of improving, embellishing and preserving said cemetery grounds now owned and controlled by said association."

J. C. Hedenberg testified that he was, and had been for many years, secretary of the cemetery association, that defendant had never served upon him or offered him an assessment list, and that he told defendant when he called on him that J. M. Wilson was treasurer of the association and that Mr. Wyatt was president. On cross-examination, he said that he told defendant that the company was not subject to taxation, but that nothing was said about a list.

J. C. Wyatt testified that he was president of the company in 1904; that he never had a word with defendant about taxation of the company and that no demand was made upon him to make out a list in 1904;

that the association owned less than fifty acres of land, and that several thousand bodies were interred in this cemetery, interments having been going on for over fifty years. On cross-examination, he testified that no dividends were paid; that the secretary gets a hundred dollars a year, which he believed was the only salary paid; that the assessment for 1903 was abated, but he did not remember why, and that he did not get any notice for taxes for the year 1904.

The relator then introduced in evidence the following sections of the tax ordinances of the city of St. Joseph:

"Section 4. In assessing personal property, the assessor or a deputy shall, as far as possible, visit the residence or place of business of each person owning personal property, and require such person to list all personal property owned by, or in the possession of, or under the control of such person, separating and placing each kind of property in the space designated on such list, first administering an oath to answer all questions touching the personal property or its value. When the list is complete, he shall require such persons to sign and verify the affidavit thereto.

"Section 6. In all cases the assessor shall sign his full name to each list, the writing and signatures to be written with ink, and the first Christian name of each person written in full; and the assessor shall, in copying the lists into the city tax books, make a full and correct copy thereof; and any assessor who shall fail or neglect to comply with any of the requirements or provisions of this ordinance, or the laws of this State pertaining to or relating to his duties as assessor, shall forfeit to the city the sum of one hundred dollars, to be recovered by suit in the name of the city, in any court of competent jurisdiction."

The defendant testified on his own behalf as follows:

"On February 3rd, 1904, I took a list prepared to be filled for the assessment of personal property, one of the printed lists, to the office of Mr. Hedenberg and offered to give it to him to make a return of the personal property of the Mount Mora Cemetery Association. I found him in his office, and he came right forward. I told him my business, and that as secretary of the Mount Mora Cemetery Association, I wanted to leave a list with him to make a return of personal property to the city, but he declined to receive it. He in his manner declined. I would not use the word 'refuse,' though I suppose it is tantamount to the same thing. He said he would not receive it because it was not assessable. I told him that I supposed that was a matter the attorney would have to do with. I told him that I wanted to make this service upon him as secretary, and he said he was not a member of the board and didn't want the list; that he had nothing to do with that. I spoke to him a little more about the matter of the assessment, and we spoke of Mr. Wyatt and Mr. Wilson, president and treasurer, and there was something said about their position as officers, and of Mr. White having this matter in charge; and I said I thought it would be better to serve the list upon Mr. Wyatt because of the confusion of names, this probably getting into the courts, and Mr. J. M. Wilson being treasurer of the board, I had better hand it to Mr. Wyatt to avoid confusion. I took my list and put it back in my pocket—I don't think it was out of my hand. I don't remember more than having offered it to him. I started to put it on the table, but he said he was not a member of the board and that it didn't belong to him, and I put it in my pocket. I took the list to Mr. Wyatt's store, not to the office. I told him what the list was, that it was for the personal property return of the Mount Mora Cemetery Association; that I didn't want to annoy him about the matter, but that

it was necessary to bring it to him. I remember now telling Mr. Hedenberg that I did not think Mr. White was the proper person as attorney for me to serve it on, but that it should be a member of the official board. I said to Mr. Wyatt that I did not expect him to pay any attention to it, and that I supposed he would re- fer it to Mr. White, but I had to serve it on him. I went out and left the list in his hand. I knew when I went to Mr. Hedenberg's office that Mr. Wilson was treasurer. I did not go to him, but went to the place where I supposed the office was, and Mr. Hedenberg said he was not a member of the board.''

The court found the issues for the defendant, re- fused to quash the assessment, and awarded judgment against the relator for costs, to which action of the court the relator duly excepted.

Relator filed motion for a new trial, which was overruled, whereupon relator appealed.

Before considering any other point raised in this case, a preliminary question must be decided; that is, whether *certiorari* will lie in this case.

As a rule the writ only lies against judicial or quasi-judicial bodies, that is, bodies performing judi- cial functions, but the authorities are not agreed as to what actions are judicial. As touching the nature and character of an assessor's duties, whether judicial or ministerial, there have been but few adjudications.; but in New York, Massachusetts and Minnesota it has been held that in fixing the value of the property assessed the assessor acts quasi-judicially, and that for the pur- pose of reviewing his acts as such assessor *certiorari* will lie. [Weaver v. Devendorf, 3 Denio 117; Barhyte v. Shepherd, 35 N. Y. 238; Railroad v. Nolan, 48 N. Y. 513; Baker v. Allen, 21 Pick. 382; Stewart v. Case, 53 Minn. 62.]

In the case last cited it is said: ''It is unques- tionable, and has been from the earliest days of the

common law, that a judicial officer cannot be called to account in a civil action for his determinations and acts in his judicial capacity, however erroneous or by whatever motives prompted. This rule and the reason for it are nowhere more clearly and emphatically stated than by Mr. Justice CORNELL in Stewart v. Cooley, 23 Minn. 350. The only question has been as to its application to officers whose duties are largely ministerial only, when they come to perform duties imposed on them in their nature judicial or quasi-judicial, as is the case with an assessor under the tax laws. When he comes to determine the value of property he exercises a quasi-judicial function; he must determine it upon his judgment. Judge Cooley, in his work on Taxation, page 786, lays it down that the exemption from private actions extends to assessors. If the rule protects such officers at all, it protects them for the same reason and to the same extent as in the case of judges of courts."

It would seem from these authorities that the writ lies in this case.

It is well settled in this State that the writ brings up for review only the record of the inferior court or tribunal, and not the evidence taken by it, and that such evidence will not be considered by the court granting the writ, though included in the return. [Railroad v. State Board of Equalization, 64 Mo. 294; State ex rel. v. Walbridge, 62 Mo. App. 162; Moore v. Bailey, 8 Mo. App. 156; State ex rel. v. Walbridge, 69 Mo. App. 657; Rogers v. Clinton County Court, 60 Mo. 101; Ward v. Board of Equalization, 135 Mo. 309.] We must therefore decline to consider the verbal testimony adduced at the trial in this case.

The relator insists that under its charter and the Constitution of this State its property, real and personal, is exempt from taxation. While it admits that ordinarily when property is claimed to be exempt from

taxation the law under which the claim is made will not be construed to grant the exemption if by a reasonable and fair construction of the taxing power it can be held otherwise, yet relator claims that a cemetery corporation organized not for profit to any one, but purely for the purpose of owning a place for the burial of the dead and the care of their last resting place, becomes in effect a public corporation, and its property is not subject to taxation.

In Cooley on Taxation (3 Ed.), vol. 1, p. 263, it is said: "Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the Legislature in adopting them. Such is the case with property belonging to the State and its municipalities, and which is held by them for governmental purposes."

Many authorities are cited by relator, most of which are to the effect that in large cities cemeteries exist as a matter of necessity, and if not placed under corporate control where money may be invested and donated for the purchase and improvement of grounds to be used for cemeteries, the proper keeping and improvement of such grounds for such purposes would become a public burden, and, being for the public good, cemeteries are exempted from the operation of general tax laws.

By section 6 of article 10 of the State Constitution it is ordained that "the property, real and personal, of the State, counties and other municipal corporations, and cemeteries, shall be exempt from taxation."

Relator contends that it was intended to incorporate in the fundamental written law a prohibition of taxing property, real and personal, taken from the general mass of individual property, and held for a public purpose without private gain, and that while ordinarily

the word cemetery is synonymous with burial grounds, the personalty of this association as an incident to the property positively declared to be exempt, should also be non-liable to taxation in like manner as the personal property of cities and other municipal corporations.

It must be remembered that the assessment of the taxes complained of here is not against the cemetery grounds or improvements, but against the personal property of the association, amounting in value to at least $120,000, as found by the assessor of the city of St. Joseph, which has been invested and used by the association as its capital, and not for cemetery purposes.

It is quite clear that, under section 6 of article 10 of the Constitution, and section 9 of relator's charter, all of the land held by it for cemetery purposes is exempt from taxation for general purposes, but does it necessarily follow that its personal property and moneys on hand acquired from the sale of lots are also exempt from taxation? As a rule, all property is subject to taxation, and, therefore, laws exempting property from taxation are to be strictly construed, and the right of exemption established beyond a reasonable doubt. [Fitterer v. Crawford, 157 Mo. 51.] An exemption from taxation exists only where it is expressed in explicit terms, and it cannot be extended beyond the plain meaning of these limits. [State v. Wilson, 52 Md. 638.]

In Rosedale Cemetery Association v. Linden Township, 63 Atl. 904, it is held, under "an act to authorize the incorporation of rural cemetery associations, and regulate cemeteries," which provides that "the cemetery lands and property of any association formed pursuant to this act or otherwise incorporated, as well as bonds and mortgages given to secure the purchase money of such cemetery lands, shall be ex-

empt from all public taxes,'' that the personal prop-
erty of such cemetery associations, consisting of
horses, hearses, carriages, agricultural implements,
tools, and other articles used exclusively in and about
their cemeteries and for burials in their cemeteries, are
subject to taxation. The court said: ''The prosecutors
insist that the word 'property,' as used in the eighth
section supra, means personal property. All exemp-
tions from general taxation are to be considered strict-
ly; the resolution, in case of doubt, being in favor of
the rule which subjects all property to a just share of
the public burdens. In State v. Krollman, Collector,
38 N. J. Law 574, the exemption from taxation of 'the
endowment or fund of any religious society, college,'
etc., was held not to include an endowment of a relig-
ious society, college, etc., consisting of land. An ex-
emption from taxation of buildings erected and used
for religious purposes was held not to exempt a par-
sonage erected by a religious society on their church
lot. [State v. Axtell, 41 N. J. Law 117; Little v. Bow-
ers, 46 N. J. Law 300; State Board of Assessors v.
Railroad, 50 N. J. Law 447, 14 Atl. 610; Presbyterian
Board v. Fisher, 68 N. J. Law 143, 52 Atl. 228.] Tax
exemptions are not favored and must be given the most
rigid admissible construction. [Cooper Hospital v.
Camden, 70 N. J. Law 478, 57 Atl. 260.] It is in ac-
cordance with the common wish of mankind that the
places where the dead are buried should be protected
and preserved against the interference of possible
sales for unpaid taxes, or under execution for debts,
and be kept free from all molestation or desecration.
These legislative exemptions of cemetery property are
the expression of that wish. But it is not perceived
how that wish is made effectual by exemption from
taxation property not used for burial places that has
no associations connected with it, and may be disposed
of by the association at any time, to any person for

any purpose. A reading of this section also discloses that all the provisions, except that relating to taxation, can refer only to real estate. The word 'property' as used in association with the words 'cemetery lands' would be reasonably and according to well-known rules of construction held to mean like property to cemetery lands, and could well refer to structures, monuments, grave stones and buildings erected upon the lands for cemetery purposes. In the general tax act, when personal property is exempted from taxation it is plainly indicated. In the tax act of 1866 as amended in 1894 (Gen. St. 3320, sec. 200, subd. 2) the exemption of colleges, etc., is as to the 'land' and the 'furniture' of the buildings and 'the personal property used therein,' and much the same language appears in the tax act of 1903 (P. L. p. 394). The tax act of 1903 exempts cemeteries under the following language: 'Graveyards, not exceeding ten acres of ground, cemeteries and buildings for cemetery use erected thereon.' The word 'property,' as used in section 8 of the act authorizing the incorporation of cemeteries, supra, does not include personal property.''

In People ex rel. v. Board of Directors of Chicago Theological Seminary, 51 N. E. 198, it was held that the words ''the property of whatever kind or description belonging to and appertaining to said seminary shall be forever free and exempt from all taxation'' did not mean *all* property belonging to the *corporation,* and property owned by it but not appertaining to the seminary, though the income therefrom was used for seminary purposes, was not exempt. The court said: ''It is manifest that the purpose of the section was to exempt property owned by the corporation, but it does not follow that the intention was to include in that exemption all property owned by it, used for the purpose of a seminary.''

In City of Kansas v. Kansas City Medical Col-

lege, 111 Mo. 141, it is held that the exemption from taxation of a lot "with the buildings thereon" when used for schools (Constitution, art. 10, sec. 6; Revised Statutes 1889, sec. 7504), does not include office furniture, nor the furniture of a chemical laboratory not fastened to the building.

It is true that section 2 of relator's amended charter provides "that after the payment of the present liabilities of said association and the reimbursement to the stockholders of the amounts of money they have advanced or may advance to purchase and improve said cemetery grounds now owned by said association, the residue of the income of said association, either from sale of lots or from any other source, shall be forever held, kept and used by said board of trustees and their successors for the sole and only purpose of improving, embellishing and preserving said cemetery grounds now owned and controlled by said association;" but that section cannot, we think, be construed as exempting the personal property of the corporation from taxation. It makes no reference whatever to the subject of taxation, which subject was evidently not in the minds of the Legislature at the time. Nor do we think that section 6 of article 10 of the Constitution, supra, can be construed as indicating an intention on the part of the framers of that instrument to exempt from taxation the personal property of cemeteries, whether owned by a corporation or otherwise. In that section the words, "the property, real and personal, of the State, counties and other municipal corporations," are separate from and have no connection with the words "and cemeteries," which follow. The exemption extends to "cemeteries" as such, but the section makes no reference to any kind of property in that connection, and section 7 of said article expressly provides that "all laws exempting property from taxa-

tion other than the property above enumerated shall be void."

Section 9119, Revised Statutes 1899, states and embraces the persons, properties and subjects exempt from taxation, and not expressly exempted by the Constitution, and personal property belonging to cemeteries is not included.

For these reasons we must rule this point against the relator.

It is further contended by relator that the particular assessment complained of is void for want of compliance with the law regulating assessments of personal property in cities of the second class, in that the notice required by section 5575, Revised Statutes 1899, is not shown to have been given. That section is as follows:

"The assessor shall, at least ten days before the first day of January in each year, give public notice, by advertisement in some daily paper published in the city, and also by hand-bills posted and circulated throughout the city, that all persons owning or having in their possession or under their control, whether as owner or agent for another, on the first day of January next ensuing, personal property subject to municipal taxation, are required to deliver to him, at his office, on or before the fifteenth day of February next, lists of all such property, classified as required by law, with the true cash value thereof; and that all merchants doing business in the city are required within the same time to furnish to him, at his office, a true statement, verified by the oath or affidavit of such merchant, or his agent, of the highest amount in value of all goods, wares and merchandise owned or kept on hand for sale by such merchant, at any time within three months before such first day of January."

While it is true that neither the original nor amended return to the writ of *certiorari* shows a com-

pliance with this statute, it is quite evident that the lists thereby required to be made out are solely for the convenience of the assessor, enabling him to make his assessments with the more expedition and accuracy; and as his failure to comply with the statute in no way prejudiced the taxpayer, such failure does not, in our opinion, invalidate the assessment in question.

Section 5579, Revised Statutes 1899, among other things provides that the assessor and his deputies shall be authorized to administer oaths, and may require any person to verify any lists made by him, and may, by a notice delivered to any person or left at his residence, office or place of business, require such person, within five days, to deliver to him at his office any list or statement necessary for the purpose of making the assessment, and to verify the same by affidavit; and any person failing or refusing to verify such list, when so requested by the assessor, or to deliver and verify such list, when notified by the assessor so to do, shall forfeit to the city one hundred dollars; and the assessor shall assess such person according to the best information he can get, without stating the kind of personal property as provided by statute.

The return to the writ shows a substantial compliance by the assessor with this statute. It shows that he did call at the office of the corporation at the time indicated, where he found the secretary thereof, and also called on the same day at the place of business of the president of the corporation, and presented to each of said officers a blank list, with the request that they fill out said list and return it to him at his office, but that each of them refused to accept said blank list, or to have anything to do with it, or to fill it out and return the same to him. Having complied with the statute in this respect, the assessor had the right and authority, upon the failure and refusal of the relator's officers to make out and return to him

a list of its personal property, to assess such property according to the best information he could get without stating the kind of personal property as provided in section 5577 of the statute.

That the assessor had jurisdiction of the subject-matter and of the corporation is indisputable, and, finding no reversible error in the record, the judgment of the circuit court is affirmed.

All concur.