## Ivy Hill Cemetery Company's Appeal.

Argued October 17, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frederic L. Clark,* of *Shields, Clark, Brown & Mc-Cown,* with him *P. Nicholson Wood,* for appellant.

*Knox Henderson,* with him *Robert von Moschzisker,* for School District of Philadelphia, appellee.

*John J. Elcock,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for City of Philadelphia, appellee.

OPINION BY PARKER, J., January 31, 1936:

Real estate of the Ivy Hill Cemetery Company, the registered owner of a parcel of land in the city of Philadelphia, was assessed at $87,000 for city and county taxes for the year 1932. The board of revision of taxes reduced the valuation to $80,000, of which $10,000 was

on account of ten acres which it is conceded was subject to taxation and $70,000 was on account of a mausoleum constructed as a private enterprise for the purpose of selling at a profit crypts with burial privileges therein. On appeal to the court of common pleas, the sole question raised was as to the right of the cemetery company to exemption from taxation for the $70,000 assessed on account of the mausoleum. The judge who conducted the hearing in common pleas recommended that the appeal be sustained and the exemption allowed, but the court sitting en banc made a final order sustaining the board of revision of taxes and refusing the claim for exemption. We are of the opinion that the final order was correct.

The facts are not in dispute so that the sole question now in issue is one of law. The Ivy Hill Cemetery Company is a corporation not for profit and its usual operations have been such that, as a general proposition, its land used for burial purposes is entitled to exemption. On November 19, 1930, a copartnership trading under the name of Ivy Hill Mausoleum Company entered into a written contract with the cemetery company whereby the mausoleum company paid to the cemetery company the sum of $10,000 for the use of a parcel of land sixty feet by one hundred fifteen feet and containing seven thousand square feet, and also paid to the cemetery company the sum of $15,000 to be retained by it as an endowment fund, the income to be used in the maintenance and repair of the building, and the mausoleum company undertook to erect a community mausoleum on the land so secured. The mausoleum company reserved the right to sell the crypts and retain the entire proceeds therefrom. The building contained 560 crypts and the promoters, who virtually admit the enterprise was and is engaged in for profit, expect to realize from the sale of these crypts approximately $280,000, while the cost was approximately $135,000. The first burial

in the mausoleum was made on December 3, 1931, and the building was finally completed about March 15, 1932. At the time the assessment was made a number of crypts had been sold to private individuals for burial purposes, but a large number had not then been sold and had not been sold at the time of the hearing. The cemetery company assumes entire control of the mausoleum and receives the same fee for a burial permit that it does for interments in the ground. The mausoleum company has no further interest in the building other than the right to sell the crypts at such price as they may fix. There is no profit to the cemetery company, and such sums as it receives either from the sale of lots and the endowment fund or for its services in opening the crypts are devoted exclusively to the maintenance of the cemetery.

"Assessment for purposes of taxation should be made as the law directs. When a deed or other conveyance is duly recorded and registered in the name of a given person he, as the registered title holder, is regarded as the 'owner' for purposes of assessment and taxation, and is personally liable for taxes levied on the property. This liability attaches because he holds himself out to the world through public records as owner by being registered and recorded as owner. That such a registered owner, though holding the title absolutely, is merely a dry trustee for the real owner, does not relieve him from that liability. The legislature did not intend that its governmental subdivisions should be put to the trouble and expense of looking behind the record to ascertain who is liable for taxes. When a deed, showing title in a given person, is duly registered under the Act of 1865 and subsequent acts in relation thereto, the taxing authorities need not search beyond this public record to determine if there is some other person against whom it shall levy tax": Penna. Co. v. Bergson, 307 Pa. 44, 51, 159 A. 32. It follows that under the state of this rec-

344

ord we are not concerned with a question as to whether the cemetery grounds were used for profit by the cemetery company, but are bound to consider whether such land was in fact used or held by any one for private or corporate profit.

The appellant, in its brief, concedes that if it is entitled to an exemption it is by virtue of the Acts of 1919, 1921, and 1925, to which we will later make more extended reference. If the appellant is to be exempted from the payment of the tax, it must clearly bring itself within the provision for exemption contained in those acts. Language which relieves from taxation is to be strictly construed: Academy of Fine Arts v. Phila., 22 Pa. 496; Com. v. Lackawanna I. & C. Co., 129 Pa. 346, 356, 18 A. 1120; Com. v. Sunbeam Water Co., 284 Pa. 180, 183, 130 A. 405. We have first the constitutional provision that "all taxes shall be uniform, upon the same class of subjects......and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation...... places of burial not used or held for private or corporate profit" (Art. IX, §1). The legislature has accordingly provided that all burial grounds not used or held for private profit "are exempted from all and every county, city, borough, township, bounty, road, school, and poor tax ...... Provided, That the entire revenue derived by the same be applied to the support of and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose." It is also required that property in actual use and occupation for the purpose aforesaid shall be subject to taxation unless the person using and occupying the same, shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely. (Acts of July 17, 1919, P. L. 1021; April 9, 1921, P. L. 119; March 17, 1925, P. L. 39; April 30, 1925, P. L. 388; 72 PS 4701.)

We are primarily concerned here with the expression "not used or held for private or corporate profit." The facts are not in dispute and the inference is irresistible that the mausoleum company constructed this mausoleum and is still engaged in selling crypts therein with the primary object in view of making a profit. "If a real estate company purchased land, kept it in good condition, and later sold it at an advanced price, every one would admit it had made a 'corporate profit' ": Harrisburg v. Harrisburg Cem. Assn., 293 Pa. 390, 393, 143 A. 111. We will advance a step further and suggest that it is equally apparent that if an individual should purchase a tract of land, lay it out in cemetery lots, and engage in the sale of these lots at an advance of cost as a business enterprise with the object in view of making a profit, one would not have the temerity to argue that such tract of land was not subject to any taxation. The words of the constitution and of the acts of assembly are not ambiguous and, if they mean anything, exclude the right to exemption where the enterprise is conducted for profit.

We see no difference, with respect to the aspect of the question now being considered, in a situation where the burial is in a crypt above ground or in a cement or metal lined grave beneath the ground level. The right to exemption is not affected by the manner of sepulture. But the right of exemption ceases when the enterprise is conducted for private profit even though it may be a business that is primarily concerned with the burial of bodies. The law applicable to cemeteries is not materially different than that applied to religious, educational, and charitable undertakings. In such cases property otherwise exempt may not be rented for the conduct of business by others for private profit without affecting the right to exemption, and it is the use to which the land is put rather than the compensation received which determines the status: Phila. v. Barber,

160 Pa. 123, 128, 28 A. 644; Amer. Sunday School Union v. Phila., 161 Pa. 307, 29 A. 26.

It is suggested by appellant that if the position of the court below is correct, then if a cemetery company whose land is otherwise exempt should permit a third party to erect a tombstone within the grounds or a nurseryman to plant trees and shrubs therein, since such business is conducted for profit, the cemetery company would make itself liable for some taxation. The situations are not parallel. The erecting of the tombstone and the beautifying of the lots are mere incidents to the right of burial and it is precisely at this point that the line is drawn. The situations would be more nearly parallel if the cemetery company rented a place of business to a dealer and worker in tombstones or to a nurseryman to conduct a business, exhibit wares, and sell them for profit. Such business might be for the convenience of lot owners, but there would be an additional element which consisted in devoting the land or use of the land to a business for profit. We agree with the appellants that if an individual or number of persons contracted with the mausoleum company to erect a building which was to be used solely for burial purposes and not as a speculation or with the intention of reselling for profit, the erection of such construction would not defeat the exemption any more than the digging of a grave would affect it.

Neither are we concerned with a situation that may arise when the crypts have all been sold to persons who purchase and hold them for burial purposes, for such are not the conditions with which we are dealing. A different situation may then well arise. No question is raised on this appeal as to the amount of the assessment, nor is there sufficient data on the record for us to determine as a matter of law such question.

As was said by the learned judge of the court below, it is clear that the mausoleum company which received

the proceeds from the sale of the crypts and is still engaged in such enterprise is, during such time, carrying on a purely business enterprise for profit, and such portion of the land and building as is so used is held for private profit and therefore does not fall within the exemption of the statute.

The order is affirmed at the cost of the appellant.