## Temple Israel of Wynnefield v. City of Philadelphia et al.

*George J. Stein, A. E. Hurshman,* and *Benjamin Abramson,* for plaintiff.

*Howard E. Stern, Michael D. Hayes,* assistant city solicitors, and *Francis F. Burch,* city solicitor, for defendants.

*Edward B. Soken* and *C. Brewster Rhoads,* for school district.

OLIVER, P. J., November 17, 1941.—. . . . Plaintiff asserts the right to an exemption for the vacant lot adjoining its synagogue on the basis of constitutional and statutory provisions heretofore enforced by the courts of this Commonwealth. Our Constitution provides, in article IX, sec. 1:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority

levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation . . . actual places of religious worship. . . ."

Thus authorized to provide certain exemptions, the legislature, by the Act of May 22, 1933, P. L. 853, art. II, sec. 204, 72 PS §5020-204, enacted that:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: (a) All churches, meetinghouses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same; . . . (1) . . . all property, real or personal, other than that which is in actual use and occupation for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for State purposes, and nothing herein contained shall exempt same therefrom."

Pursuant to these enactments it has been held quite consistently by our courts that a bill in equity will lie to enjoin the collection of taxes if the property sought to be taxed is used in its entirety as a place of worship: Chevra Achewa Chesed Anshe Cheval v. Philadelphia et al., 116 Pa. Superior Ct. 101 (1935), and authorities therein cited.

However, ". . . if the specific property attempted to be taxed is only partially exempt, [there is not] a total want of power to tax; and in such case the remedy is by appeal from the assessment to the court of common pleas, and not in equity by injunction": Chevra Achewa Chesed Anshe Cheval v. Philadelphia et al., supra, p. 105.

Hence, unless the testimony reveals the right to total exemption of plaintiff's property, the bill must be dis-

missed: Dougherty v. Philadelphia et al., 314 Pa. 298 (1934). And the burden of proving the right to such exemption is upon the property owner asserting it: Board of Home Missions and Church Extension of the Methodist Episcopal Church v. Philadelphia, 266 Pa. 405 (1920); Ivy Hill Cemetery Company's Appeal, 120 Pa. Superior Ct. 340 (1936); Dougherty v. City of Philadelphia et al., 112 Pa. Superior Ct. 570 (1934); Dougherty v. Philadelphia et al., supra.

Plaintiff's lot measures approximately 163 feet by 276 feet; and upon one corner thereof plaintiff has erected a synagogue 38 feet by 77½ feet. The tax which plaintiff asks us to enjoin is not upon the entire lot, for the board of revision of taxes has exempted a substantial portion thereof, including not only the ground upon which the synagogue is built, but also the vacant ground immediately surrounding the building, extending for a distance of about thirty feet to the rear and 42 feet to the south of the building. It is plaintiff's view that the entire area, and not merely a portion thereof, should be exempt. In support of that contention evidence was produced to the effect that the land adjoining the synagogue is used in connection with various services which, according to the Jewish ritual as observed by plaintiff, require outdoor congregation. Among these are: First, the festival of Succoth or Tabernacles, observance of which necessitates erection of a temporary booth or shelter; and, second, the Kiddush Levona or sanctification of the moon, performed outdoors in full sight of the moon. The vacant land is also used to accommodate those individuals who, on the Day of Atonement, must temporarily leave the synagogue since not permitted by tradition to participate on that day in certain portions of the regular services. For the children attending the religious school 10 months of the year the lot constitutes a playground. And when space limitations within the synagogue render impossible the attendance of large audiences

on special occasions, resort is had to the ample grounds outside where the overflow may gather and listen to the services as broadcast over specially installed loud speakers.

With the exception of only the last item, all the above-mentioned examples of the use of vacant ground as a place of actual worship were cited recently before a common pleas court considering a matter similar to the one now before us. In Beth Sholom Congregation v. Philadelphia, C. P. No. 6, March term, 1939, no. 3445 (June 19, 1939), Judge Bok deemed these uses sufficient to warrant the conclusion that the lot constituted "an actual place of worship", and as such was entitled to exemption from taxation.

That case, in our opinion, is authority for the exemption of vacant ground adjacent to a synagogue when used in the manner there described. The rule, however, is not without qualification. As stated by us in an analogous case:

"The rule of reason necessarily applies. A very large church would be entitled to a larger allowance of vacant ground for the purpose of admitting light and air to the premises. A small church, on the other hand, requires less provision for light and air": Appeal of The Chester Avenue Baptist Church, C. P. No. 7, September term, 1939, no. 3211 (April 24, 1940).

What we said there concerning allowance for light and air applies with equal force to provision of facilities and space for outdoor services. Beth Sholom's congregation numbered approximately a thousand persons, and the court exempted for their use a triangular lot which measured approximately 170 feet on one side, 105 feet on another, and 210 feet on its hypotenuse. Plaintiff, on the other hand, has about two hundred families as "more or less" regular subscribers to the congregation. The seating capacity of its synagogue is only 310, although more can be accommodated by use

of an additional room in the basement. The Succoth or Tabernacle services were attended by only 100 to 150 members, and the booth itself was only 33 feet by 15 feet in size. For the monthly sanctification of the moon the maximum attendance at any one time was about forty-five persons. And the school children who use the lot as a playground numbered in all about one hundred and twenty. To accommodate plaintiff for all these uses the present exemption, in our opinion, is sufficient. Plaintiff has failed to prove otherwise.

Use of the lot in connection with the special services on Memorial Day and the presentation of holy scrolls to the synagogue is not in the same category with its use for the Succoth or Kiddush Levona services. The latter two services must be held outdoors regardless of the number in attendance, while the former necessitate use of the adjacent lot only in event of the gathering of a congregation larger than the facilities of the building can accommodate. They are not provided for by the ritual of the synagogue, hence do not constitute "stated" regular services within the meaning of the exempting statute. See Appeal of the Chester Avenue Baptist Church, supra.

"To come within the exempting clause, it must be an actual place of religious worship—which contemplates a place consecrated to religious worship . . . where people statedly join together . . . in some form of worship . . .": Laymen's Week-End Retreat League of Philadelphia v. Butler et al., 83 Pa. Superior Ct. 1 (1924).

Plaintiff is not entitled to exemption for this additional portion of its land, and the bill must therefore be dismissed.