[Civ. No. 13404.   First Dist., Div. Two.   Sept. 3, 1947.]

LAUREL HILL CEMETERY ASSOCIATION (a Non-profit Cemetery Association), Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Myrick, Deering & Scott, James Walter Scott, Jr., and Royal E. Handlos for Appellant.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Respondent.

GOODELL, J.—The appellant sued to recover $8,948.98 in taxes paid under protest.

On the first Monday in March, 1944, legal title to 55.3 acres of land situated in San Francisco was vested in the appellant. The tract was assessed at a valuation of $189,510 for the land and $1,300 for improvements. The grounds of protest were of course the same as those presented to the trial court and on this appeal.

During the period from 1854 to 1941, this tract was dedicated and used as a cemetery, and upwards of 38,000 bodies had been buried therein. Burials in San Francisco after August 1, 1901, were prohibited by law, but it was not until 1937, that the supervisors ordered the removal of all bodies from the cemetery. By early 1941, 35,987 bodies had been removed by the association and placed in a temporary mausoleum at Lawndale, in San Mateo County, where they are now, awaiting the construction of a permanent memorial mausoleum. On February 7, 1941, notice of the removal of all bodies was recorded and on March 10, 1941, the superior court by its decree declared that the 55-acre tract, theretofore dedicated as a cemetery, was no longer so dedicated. This brought to a close the first phase of the Laurel Hill operation.

The second or intermediate phase opened with the entry of said decree, for thereafter the tract, freed from the dedication, was simply so much vacant, unused real property. On December 16, 1940, and on January 6, 1941, the association, anticipating the decree terminating the cemetery status, entered into contracts with Heyman Brothers, Incorporated for the sale to them of the whole tract. The transfer of title was delayed for several reasons. The association was obligated to file a suit to quiet title, which developed into a contest and resulted in an appeal (*Laurel Hill Cemetery Association* v. *All Persons,* 69 Cal.App.2d 190 [158 P.2d 759]). That litigation took several years and the judgment quieting appellant's title did not become final until July 12, 1945. Moreover, the construction of the permanent mausoleum was delayed by the war. The war interfered also with the financing by the vendees of their real estate project and with the physical improve-

ments thereon. It is conceded by both sides that the delay—affecting vendor and vendee alike—was unavoidable. It was during this interval that the tax was levied.

The third and final phase will open with the completion of the memorial mausoleum at Lawndale and the transfer thereto, as their final resting place, of the 35,987 bodies formerly buried at Laurel Hill.

Section 1b of article XIII of the state Constitution reads: "All property used or held exclusively for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property or such dead, except as used or held for profit, shall be free from taxation and local assessment." From the time of the adoption of that section in 1926, until March, 1941, Laurel Hill Cemetery was exempt from taxation. It seems clear (although that question is not before us) that the memorial mausoleum which will contain the 35,987 bodies will be likewise exempt, for it will be used for the "permanent deposit of the human dead" and will not be "used or held for profit."

The question presented for decision is whether, during the fiscal year 1944-5 (within the second phase of the operation and intermediate the two periods of tax exemption) the 55-acre tract was subject to taxation.

The contracts of sale, entered into several years before this tax was assessed, were in effect at the time of the assessment. The appellant urges with considerable force that this case calls for the application of the doctrine of equitable conversion, the argument being that after the decree of the superior court establishing the reasonableness of the selling price "the vendees were the equitable owners of the land . . . legal title being retained by the . . . Association as security for the price and the Cemetery Association was the equitable owner of the moneys, personal property, held and earmarked by the terms of the Morris Act . . . to be used exclusively for the purposes enumerated in sections 7925 and 7926, Health and Safety Code. . . ." Accordingly they conclude that, as the doctrine of equitable conversion treats land as money and money as land, the 55-acre tract represents and is, in legal contemplation, the money derived from the sale, and that such money should be exempt from taxation because it is destined by section 7925 for an ultimate use which will be tax-exempt. That section reads:

"*Exemption of proceeds of land sales: Authorized uses.* Money payable or to become payable as the purchase price or

on account of the purchase price of unused lands, or lands from which all remains have been removed is not subject to garnishment, attachment or execution, but shall be used exclusively for any or all of the following purposes:

"(a) Acquisition of lands and improvements for cemetery purposes.

"(b) Disinterment, removal, and reinterment of bodies, pursuant to this chapter.

"(c) Perpetual case of graves, markers, and cemetery embellishments.

"(d) The payment of expenses incidental to the disinterment, removal, and reinterment.

"(e) Any other purpose consistent with the objects for which the cemetery authority owning the cemetery is created or organized."

It must be conceded, of course, that if the tax of $8,948.98 stands, it depletes the proceeds of the sale by just that much.

The appellant cites no authority in this state where the doctrine of equitable conversion has been applied in the field of taxation and apparently none is to be found. There is a division of authority on the subject in the United States (112 A.L.R. 23-27; 19 Am.Jur. 18; 51 Am.Jur. 540).

In 51 American Jurisprudence, page 612, this is found: "In general, cemeteries are exempted from taxation by express statutory or constitutional provision, . . . . Such an exemption is favored upon grounds of public policy. One reason for their exemption is the difficulty of collecting a tax thereon and the obvious impropriety of selling the graves of the dead in order to pay the expenses of carrying on the government of the living." That this is the reason for the exemption found in our Constitution appears from the opinion in *Cypress Lawn Cemetery Association* v. *City and County of San Francisco*, 211 Cal. 387, 391 [295 P. 813], where the court says: "It is in accordance with the common wish of mankind that the places where the dead are buried should be protected and preserved against interference of possible sales for unpaid taxes, and be kept free from molestation or desecration. Exemptions of cemetery from taxation are but the expression of that wish. That this is true as regards section 1b of article XIII, *supra*, appears from the argument made in favor of the proposed constitutional amendment and sent to all of the voters prior to the election at which it was adopted. The proponents of the measure urged that it 'should have been adopted long ago

in order to protect the last resting place of the departed. . . . The county assessors know that they cannot under the law seize and sell a burial lot containing a body and yet under the present law, they are compelled to levy an assessment against such a plot, . . . . Finally, only the cemetery property not held for profit and owned by those exclusively for burial purposes is exempted. It will not relieve from taxation property of cemetery associations and others which is to be sold for profit, but only property to be used exclusively for the burial of the dead, and this sacred property should be kept tax free. . . .' "

Thus it appears that the exemption is confined to lands and structures (and reasonable surroundings and embellishments) which at the time afford actual sepulchre to human bodies, and the reason underlying the exemption is the protection of such bodies and the land wherein they are buried "against interference of possible sales for unpaid taxes." The 55-acre tract at the time of the assessment contained no bodies. It was simply so much unused land, subject to sale for real estate development.

■ If the court applied the doctrine of equitable conversion in this case by treating the land as money it would have to go out of its way to invoke a legal fiction in aid of an exemption from taxation. This would run counter to the rule that exemptions must be strictly construed against the taxpayer which rule is settled by many authorities including: *Cypress Lawn* case, *supra,* 211 Cal. 387, 390; *Bay Cities Transportation Co.* v. *Johnson,* 8 Cal.2d 706, 712 [68 P.2d 710] ; *Miller* v. *McColgan,* 17 Cal.2d 432, 442 [110 P.2d 419, 134 A.L.R. 1424] ; *Pacific Greyhound Lines* v. *Johnson,* 54 Cal. App.2d 297, 303 [129 P.2d 32] ; 21 Cal.L.Rev. 193 at 213, 215.

■ We are satisfied that this case falls within the reasoning of the Cypress Lawn case, *supra,* 211 Cal. 387. There it was contended that a San Francisco hotel owned by the cemetery association, a nonprofit corporation, was exempt from taxation because the income from the hotel was used toward the care, maintenance and upkeep of the cemetery and the care of the dead buried therein. The court held otherwise, stating that the direct and primary use of the hotel was the housing of guests. Here the claim is made that this 55-acre tract, the direct and primary use of which is the subdivision thereof into residential lots, is exempt. We think the reason for denying the exemption is substantially the same in both

cases. What is said in the Cypress Lawn case (p. 392) seems apposite: "We cannot perceive how the wish to protect and preserve the resting place of the dead would be made effectual by exempting property, such as is herein involved, and which may be disposed of at any time and for any purpose."

■ Independently of equitable conversion, appellant argues "that under the circumstances here disclosed the whole or all of the . . . Association's property is being used or held exclusively for the permanent deposit of the human dead, or for the care, maintenance or upkeep of . . . such dead within the intendment of California Constitution, Article XIII, Section 1-b." This does not differ essentially from the argument made and rejected in the Cypress Lawn case.

The basis for this contention is that, although all bodies had been exhumed and the dedication removed, the land remained exempt to the same extent that it had been while bodies were buried therein, for the reason that section 7925, Health and Safety Code, required the proceeds of its sale to be ultimately devoted exclusively to purposes of sepulchre.

In support of this theory appellant called one of its trustees who testified that the plan was to devote the proceeds of the sale ($670,000 or thereabouts) to the acquisition of a site for the memorial mausoleum, and to its construction. Even at that he doubted whether the money "would be entirely adequate." He concluded, "No money that is received can be distributed to any other source than to the care and final keep of the bodies now down at Cypress Lawn." Counsel for respondent then said: "I know what is going to happen with respect to the money, and I will stipulate to it. They are going to take the money and erect a building in San Mateo County to house the human dead they took from Laurel Hill Cemetery, and then use the rest of the money for the purpose of investment to keep it up. . . . Perpetual care."

The trial court did not adopt the appellant's theory for it made the following finding: "That at no time since the removal of the said human remains . . . have said cemetery lands . . . been nor are they now held by plaintiff solely and exclusively for the care and maintenance of the human dead; and neither the whole nor any part of said property is held and used exclusively for the care of such dead and the whole of said property is now used and held for profit." Appellant attacks this finding as contrary to the trustee's uncontradicted testimony and the stipulation quoted above. If the finding

(saving the last 13 words) be treated as a finding of fact addressed to the physical situation of the land after the bodies were removed, it is certainly an accurate statement. If treated as a conclusion of law negativing the appellant's theory that despite the removal of the bodies the real estate asset in the hands of the association enjoys continued and uninterrupted exemption from taxation, it accords with the holding in the Cypress Lawn case.

Appellant complains that the last 13 words of the same finding, "and the whole of said property is now used and held for profit," conflict with the admitted fact that appellant is a nonprofit corporation. There is no such conflict for "The carrying on of business at a profit," says section 593 of the Civil Code, "shall not be deemed forbidden to nonprofit corporations." (See, also, *San Gabriel Cemetery Assn.* v. *County of Los Angeles*, 49 Cal.App.2d 624 [122 P.2d 330].) It might well be that the idea of profit ("Accession of good; valuable results; useful consequences; avail; gain . . ." Webster's New Intl. Dict. 2d ed.) was lodged with the court by the testimony of the trustee that the 55-acre tract was carried on the association's books at a valuation of $129,000, while it was being sold for $670,000 or thereabouts. This finding is not necessary to support the judgment, however, for under the reasoning of the Cypress Lawn case, once it is found that the bodies were removed the conclusion follows that the land, no longer a cemetery, is no longer exempt, profit or no profit.

The finding that "said cemetery was abandoned as such" is likewise attacked. The court doubtless used "abandoned" as synonymous with "discontinued." In any event there is good precedent for speaking of an *abandoned cemetery* for the Legislature itself used that expression in the Morris Act (Stats. 1923, p. 646, §§ 5, 10, 15), and in sections 9201, 9202 and 9220, Health and Safety Code. Moreover, when the last body was exhumed the cemetery certainly was discontinued or "abandoned" *as such*. The finding is not material for reasons already given, that nonexemption follows from the removal of bodies.

The same reason renders immaterial the finding that since March, 1941, "said real property has been used for purposes other than a cemetery." If the land was no longer a cemetery, the use to which it was put after March, 1941, is immaterial.

Finally, appellant attacks the following finding in the light of the trustee's uncontradicted testimony and the stipu-

lation as to the use of the proceeds of sale: "That the particular proceeds of said sale are not necessary for the acquisition of lands for said mausoleum, for the construction of said mausoleum, and for the establishment of a perpetual care fund to maintain the same. *But plaintiff is, and will be, without funds or assets with which to house the bodies removed from Laurel Hill Cemetery and to maintain the same, unless a part of the proceeds of said sale are used for such purpose, and the balance is invested for the purpose of obtaining funds to maintain the mausoleum* to be erected for the purpose of housing said bodies, or unless plaintiff obtains funds or assets from some other source." (Emphasis ours.)

The language which we have emphasized makes it clear, in spite of the first sentence of the finding, that the court had in mind that the building of the mausoleum might not exhaust the $670,000 fund, and that the overplus would be invested (as in the Cypress Lawn case) to provide an income for upkeep. There was no satisfactory evidence as to the cost of the mausoleum or as to the size of the fund required for its maintenance. About all the court could do was to find, as it did, that part of the fund would be needed for construction and part for maintenance. We are satisfied that the emphasized part of this finding is the dominant and controlling part and that, when read as a whole, the finding is not self-contradictory. The duty of the association with respect to the proceeds of the. sale is clearly defined by section 7925, and nothing in this finding can control or interfere with the performance of such duty, for the court in this litigation is not called on to adjudicate such question.

We are satisfied that the court correctly held the property to be taxable.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied October 3, 1947, and appellant's petition for a hearing by the Supreme Court was denied October 27, 1947. Carter, J., and Schauer, J., voted for a hearing.