327 P.2d 766

In the Matter of the Tax Exemption of **SUNSET MEMORIAL GARDENS, Inc., a Corporation, Respondent and Cross-Appellant,**

v.

**IDAHO STATE TAX COMMISSION, Appellant and Cross-Respondent.**

No. 8617.

Supreme Court of Idaho.

July 2, 1958.

Graydon W. Smith, Atty. Gen., Elbert E. Gass, Asst. Atty. Gen., Lloyd G. Martinson, Pros. Atty., Moscow, for appellant.

Felton & Bielenberg, Moscow, for respondent.

DUNLAP, District Judge.

Sunset Memorial Gardens, Inc., a Corporation, plaintiff in the court below, and hereinafter designated as corporation, is an Idaho corporation, existing under and pursuant to the general corporation laws of the state, also known as the Business Corporation Act [Chapter 1, Title 30, Idaho Code].

The corporation was organized on or about November 1, 1954; its purpose, as stated in its articles, are, inter alia:

1) To engage in the cemetery business and to carry on, conduct and operate a place for the receiving, placing and burial of the dead;

2) To construct, buy, build, or acquire such buildings as may be necessary or convenient in conducting such business, including the building and construction of monuments, mausoleums, markers, tombstones, chapels and cemeteries;

3) To establish and maintain trust funds for the purpose of providing endowment care of burial lots;

4) To lay out and plat lands into cemeteries;

5) To receive, acquire, hold, purchase, convey, mortgage and/or lease, real property, and to assign, transfer, mortgage, dispose of, sell or lease, rights, franchises, real or personal property of the corporation, and to hold, acquire, purchase, guarantee, hold, mortgage, own, vote, sell and pledge and deal in shares, bonds, securities, debentures, and other evidence of indebtedness of other corporations;

6) To issue shares and admit shareholders, and to sell their shares for the payment of assessments or installments;

7) To issue bonds, debentures or other securities, and to mortgage or otherwise encumber its real or personal property;

8) To conduct business in this and every other state.

The capital stock consists of 100 shares common voting stock, with no par value.

It thus appears the corporation was organized for the purpose of seeking pecuniary profits, and it was so stipulated.

By-laws and rules and regulations for carrying on the business were duly adopted, from which it appears that ownership, use, and transfer of lots is strictly for burial purposes, subject to the rules, regulations, and control of the corporation.

Interment rights can only be purchased or transferred with the written approval of the corporation's authorized officers.

All purchase agreements are to provide for a payment of 15 per cent of the purchase price of each lot for the corporation's endowment care fund, and the income earned from this fund is to be used for the general care, maintenance and embellishment of the cemetery, and the lots therein, and are to be applied in such manner as the corporation shall determine to be for the best interests of the cemetery generally.

Lot owners are vested with ownership only for interment purposes; general care of the cemetery grounds is assumed by the corporation under the provisions of the endowment fund trust agreement.

No persons other than officers and employees of the cemetery are allowed to perform any work on any grave or lot; only such memorials as are selected by the cemetery or approved by the cemetery may be placed on the lots; any memorials not pur-

chased through the cemetery must, before being placed, have been analyzed by an independent laboratory, and an affidavit as to its composition furnished, and all memorials are to be installed by the cemetery on foundations built by the cemetery.

Installation and continual care charge are on a square inch basis; the cemetery's removal charges for a body are not less than $50, payable in advance. If it is necessary for remains to be temporarily placed in a receiving vault a cash deposit of not less than $125 is required; transfers of ownership in lots are subject to a $5 charge.

The corporation, on or about October 29, 1952, acquired for its purposes, 10, more or less, acres of land located in Latah County, and immediately thereafter and prior to January 1, 1955, proceeded to plat 5 acres into cemetery lots, roads and entrances; the remaining 5 acres has not been improved but is being held by the corporation for anticipated needs as a cemetery.

It was stipulated that the land so acquired is a place, an area of ground set apart for the burial of human dead and is open pursuant to the corporation's articles, by-laws, and rules, to the use of the public for that purpose, and was so used during the calendar year 1955, and that the 5 acres not platted held in reserve for anticipated future needs is so held in good faith for use as a cemetery, subject to the terms and conditions of its articles, by-laws, rules and regulations, and is not disproportionate in extent to the population of the community to be served, and a reasonable expectation of the service to be rendered.

This 5-acre tract will be hereinafter referred to as the easterly 5 acres, and the platted portion will be hereinafter referred to as the westerly 5 acres.

The County Assessor assessed the 10-acre tract for the year 1955 and levied a tax thereon in the sum of $143 which was paid by the corporation under protest, and it filed a claim with the County Board of Equalization on the ground that the property

"* * * is a place and an area of ground, set apart for the burial of the human dead, and is open, under reasonable regulations, to the use of the public for the burial of the human dead, and was during the calendar year 1955, used as such by the public at large.

"* * * is used, owned, and held by said corporation as a public cemetery; that the above described premises and the ownership thereof by said corporation is in all respects a public cemetery, as the phrase, 'all public cemeteries' is used in Section 63–105, subdivision 14, as amended in 1949, Idaho Code; and that said premises and said corporation are exempt from the afore-

said taxation for the year 1955 and thereafter."

The claim was disallowed by the County Board from which the appeal was taken to the State Tax Commission, which after hearing, entered its order sustaining the assessment.

Appeal was taken to the District Court, and the court ordered, adjudged and decreed to effect, that

"* * * Latah County's action in assessing, levying and collecting general property taxes" against the five (5) acres that had been platted and used for cemetery purposes is illegal and void, and said lower court ordered Latah County to refund one-half of the general property taxes paid by the respondent.

"The lower court also ordered, adjudged and decreed that "Latah County's action in assessing, levying and collecting general property taxes" against the five (5) acres not platted and not used for cemetery purposes was legal and valid."

The commission appeals from the order in the first paragraph of the decree set out above, and the corporation from the order in the second paragraph.

Appellant and cross-respondent hereinafter referred to as the commission, alleges the following assignments of error:

In adjudging and decreeing that the assessment and taxes levied against the five (5) acres of land platted and used for cemetery purposes was illegal and void.

In adjudging and decreeing that Latah County refund one-half (½) of the general property taxes paid by respondent.

On the cross-appeal the corporation as cross-appellant also alleges two assignments of error on the part of the trial court.

"In adjudging and decreeing that the assessment and taxes levied against the five acres of land not platted and used for cemetery purposes was legal and valid."

"In adjudging and decreeing (at least by inference) that the westerly five acres of respondent's described real property is not used for cemetery purposes."

Therefore, there are two issues or questions for our determination.

1) Is the respondent, a corporation organized under the Business Corporation Act [Chapter 1, Title 30, Idaho Code], and formed for the express purpose of profit, a "public" cemetery within the intent and meaning of Section 63–105(14), Idaho Code, so as to entitle it as a matter of legislative grace to an exemption from ad valorem taxation?

2) If the first issue is answered affirmatively, then a second question necessarily must be answered: Are all of the respondent's lands exempt from taxation, or only such lands as have been platted and from which burial lots have been sold and in which bodies have been interred?

So far as we have been able to ascertain, the precise questions involved here have never been considered by this court, and it is so conceded by the parties.

The corporation bases its claim for exemption on Section 63–105, Idaho Code, the pertinent portion of which reads as follows:

"63–105. Property exempt from taxation.—The following property is exempt from taxation: * * *

* * * * * *

"14. All public cemeteries. * * *."

Thus it clearly appears under this section "public" cemeteries are exempt from taxation and the prime question here is, was respondent a public cemetery within the intent and meaning of the legislative enactment.

The corporation, in support of its claim of exemption, cites the following cases: City of Wichita v. Schwertner, 130 Kan. 397, 286 P. 266; Parker v. Fidelity Union Trust Co., 2 N.J.Super. 362, 63 A.2d 902; Davie v. Rochester Cemetery Ass'n, 91 N.H. 494, 23 A.2d 377; Smith & Gaston Funeral Directors v. Wilson, 262 Ala. 401, 79 So.2d 48; Mountain View Cemetery Co. v. Massey, 109 W.Va. 473, 155 S.E. 547; Suttles v. Hill Crest Cemetery, 87 Ga.App. 343, 73 S.E.2d 760; State v. Crystal Lake Cemetery Ass'n, 155 Minn. 187, 193 N.W. 170; In re Mountain State College, Inc., Assessment, 117 W.Va. 819, 188 S.E. 480; State v. Browning, 192 Minn. 25, 255 N.W. 254.

None of these cases are directly in point, and, as a matter of fact, while it appears from the excellent briefs of counsel for both parties that they have carefully researched the questions involved, no cases have been discussed or cited which are directly in point on the question of taxability or non-taxability of real property in Idaho, used as a cemetery and owned by a business corporation such as we are dealing with here.

So, it is by the process of analogy of similar situations in the decisions that counsel have sought to sustain their respective positions and these decisions must necessarily be considered and weighed in the light of constitutional and statutory provisions and particular facts involved in the cases so cited.

The case of City of Wichita v. Schwertner, supra, is not a tax case and the court there was dealing with church property and the right of the city to take a portion of the cemetery by eminent domain.

Parker v. Fidelity Union Trust Co., supra, involved the construction of a will and the effectiveness of the bequests therein to a cemetery owned and operated by testatrix before her death. The gift was upheld as one made for charitable purposes in that it was the use and not the persons who administered it that determines the test of charity.

Davie v. Rochester Cemetery Ass'n, supra, involved the question of the liability of a cemetery maintained as a private corporation for the payment of tax under the provisions of the Unemployment Compensation Act, Laws 1935, c. 99. The court held the corporation to be a charitable organization and not liable; that it was organized and conducted to perform some service of public good or welfare, with no pecuniary profits to its officers or members, and with no restrictions which conferred benefits to them; that the members derived no profit from the enterprise.

Smith & Gaston Funeral Directors v. Wilson, supra, did not involve a tax exemption. The cemetery had been operated for more than 50 years and there was involved a single grave plot in which was buried a widow's husband. In making certain improvements the corporation trespassed upon the grave. The question was the application of the proper statutes of limitations. In the course of its opinion the court held that, while the cemetery was privately owned, it was properly classified as a public cemetery in contrast to a private cemetery and cited Smith and Gaston Funeral Directors, Inc. v. Dean, 262 Ala. 600, 80 So.2d 227, wherein the court applied as the test between public and private cemeteries the theory of public use, quoting from 14 C.J.S. Cemeteries § 1, page 63, to effect that a public cemetery is one used by the general community or neighborhood of a church, while a private cemetery is used only by a family or a small portion of the community.

Mountain View Cemetery Co. v. Massey, supra, did involve the question of exemption from taxation. The court, in holding a cemetery exempt, based its decision on the provision in the state's constitution, Section 1, Article 10, specifically providing that all cemeteries may be, by law, exempted from taxation, and held that the legislature, by certain of its enactments, intended private corporations to be exempt.

Suttles v. Hill Crest Cemetery, supra, involved the question of exemption from taxation and in holding the property to be exempt the court cited the state's constitutional and legislative provision to effect that "places of burial" were tax exempt and furthermore, that under these provisions it was use of the property and not the ownership that determined the exemption.

State v. Crystal Lake Cemetery Ass'n, supra, involved the question of a cemetery's exemption from a general, as well as a

special tax. The corporation was organized for pecuniary profit and held exempt from general taxation because the general laws of the state of incorporation provided in effect that, if the articles of incorporation disclosed that its sole purpose was to procure and hold land to be used exclusively for cemeteries and the procuring, holding, and operation of cemeteries, that the general laws of the state extended the exemption from taxation and assessment; furthermore, the claim of exemption from the special tax or assessment was denied because there was no legislative provision granting that exemption to cemeteries operated for pecuniary gains.

In Re Mountain State College, Inc., Assessment supra, property of a commercial college was held exempt from taxation because the state's constitution, art. 10, § 1, provided that property used for educational * * * purposes, and so forth, might be exempted from taxation, it appearing that there had been a legislative enactment exempting property belonging to colleges which was used for educational purposes and the exemption was not affected by the profit motive of the school.

State v. Browning, supra [192 Minn. 25, 255 N.W. 256], involved a hospital operated for profit and it was held not exempt from taxation under the constitutional provisions of the state which exempted "public hospitals". M.S.A.Const. art. 9, § 1. In defining the phrase, "operated for the benefit of the public", the court held it to mean operated without intent to make a profit and in defining the word "public" the court cited various meanings that might be connoted from its use, stating generally that by the use of the word "public" the legislature had not intended to confine exemptions only to property owned by the public, and further that "public burying grounds" need not be owned by the state or any of its subdivisions. Yet it still applied the profit test to determine the question of exemption.

Art. VII, Section 4, Idaho Constitution, exempts from taxation

"The property of the United States, except when taxation thereof is authorized by the United States, the state, counties, towns, cities, villages, school districts, and other municipal corporations and public libraries * * *".

while Section 5 of said Article permits the legislature to " * * * allow such exemptions from taxation * * * as shall seem necessary and just, * * *". Thus, the Constitution contains self-executing exemptions and permissive exemptions that can arise only by legislative enactment. It was in the light of the two above constitutional provisions that the legislature enacted various revenue measures, municipal corporation law [Sections 50–1127 to 50–1131, Idaho Code], and Cemetery Maintenance District Law [Chapter 1, Title 28, Idaho Code].

■ Statutes granting exemptions, which exist as a matter of legislative grace, are strictly construed against the taxpayer and in favor of the state. Section 63–101, Idaho Code. Salisbury v. Lane, 7 Idaho 370, 63 P. 383; Cheney v. Minidoka County, 26 Idaho 471, 144 P. 343; Bistline v. Bassett, 47 Idaho 66, 272 P. 696, 62 A.L.R. 323; Andrews v. North Side Canal Co., 52 Idaho 117, 12 P.2d 263; Malad Second Ward of the Church of Jesus Christ of Latter-Day Saints v. State Tax Commission, 75 Idaho 162, 269 P.2d 1077; Williams v. Baldridge, 48 Idaho 618, 284 P. 203; Annotation 168 A.L.R. 284; 51 Am.Jur., Taxation, Sections 524 and 527, Pages 526 and 527; 84 C.J.S. Taxation §§ 225 and 227, pages 431 and 437; Laurel Hill Cemetery Ass'n v. City and County of San Francisco, 81 Cal. App.2d 371, 184 P.2d 160.

■ A cemetery may be established and conducted for profit [10 Am.Jur., Cemeteries, Section 4, Page 488], and the establishment and maintenance thereof by the public has been authorized by our legislature. Sections 50–1127 and 50–1132, Idaho Code, relating to cemeteries of a municipal corporation; Cemetery Maintenance Law, Chapter 1, Title 28, Idaho Code, first authorized by Chapter 197, 1927 Laws, and Rural Cemetery Associations' Law, Chapter 2, Title 28, I.C., authorized by Chapter 181, 1933 Laws.

These legislative provisions thus clearly provide for public cemeteries, in that they authorize the creation and operation thereof by the public. They not only belong to the public, that is to a politically created public subdivision, but in the first two instances, towit, municipal corporations, and cemetery maintenance districts, these political subdivisions are authorized to levy taxes for their acquisition and maintenance.

They are therefore distinguishable from private cemeteries, organized and maintained by private individuals and business corporations to serve the public, but for the purpose of profit to the owners.

In this case the State Tax Commission ruled that the exemption from taxation of public cemeteries, as provided in Section 63–105, subdivision 14, Idaho Code, does not apply to appellant because such exemption is applicable only to political subdivisions of any tax-existing agency, department, or district of this state, even though use may be public.

If any contrary position has ever been taken by the State Tax Commission or County Boards of Equalization our attention has not been directed to that fact and it is not so claimed to be a fact by the corporation.

Section 63–105, Idaho Code, was amended by Laws 1957, Chapter 155, Section 1,

approved March 9, 1957, without change as to subdivision 14, "all public cemeteries."

In 1913 when the legislature first exempted all "public cemeteries" the only public cemetery was that authorized by the Revised Codes, Section 2238, now Sections 50–1127 to 50–1131, inclusive, Idaho Code, owned and maintained by municipal corporations.

While it is true that such cemeteries being public property were, as a matter of fact, exempted from taxation under the constitutional provision, Art. VII, Section 4, the creation of the exemption directly by the legislature cannot, in our opinion, be taken as an indication of the legislature to intend to exempt a privately owned cemetery, on the ground that it was used by the public for burial purposes, as contended by the corporation. It would seem that had the legislature so intended it would have specifically stated, by language to the effect, that all cemeteries, or, cemeteries used by the public, or other similar phrases, were likewise exempted. This the legislature failed to do, but specifically confined the exemption to "public" cemeteries.

Webster's Int'l Dictionary, 2nd Ed., unabr., defines "public" (adj.) as:

"(1) Of or pertaining to the people; relating to, belonging to, or affecting, a nation, state, or community at large; —opposed to private; * * * The term public is used in designating the legal character of various acts, rights, occupations, etc., that affect or belong to the collective body of a state or community * * *

"(2) Open to common or general use, participation, enjoyment, etc.; * * * Specif.: *a* Open to the free and unrestricted use of the public; * * * *b* Open to the enjoyment of the public under the rights and liabilities belonging to an action, occupation use or the like, called public (sense 1); serving the public under some degree of civic or state control; * * *

"* * *".

Publicly owned property used for public purposes is commonly the subject of constitutional and legislative tax exemption, and likewise privately owned property not operated for profit and which is used for religious or charitable purposes; other privately owned property not so used, has been exempted by our legislature, for instance, see subdivision 4(a–e), subdivisions 6 and 7 of Section 63–105, Idaho Code.

The purpose of such exemptions undoubtedly is to promote the public welfare, and the right of the legislature to exempt privately owned property has been recognized by this court, unless it is limited by constitutional provisions, if it is exercised to encourage private enterprise and thereby further the public welfare (Williams v. Baldridge, 48 Idaho 618, 284

P. 203). But the exception must be expressly granted, and if not so granted, the property is subject to taxation. [Section 63–101, Idaho Code.]

But it is argued in behalf of the corporation here, that the exemption has been expressly granted in that by exempting public cemeteries, the legislature meant to and did in part, exempt cemeteries used by the public for burial of human bodies.

Legislative intent may be ascertained by tracing the history of the pertinent legislation. State v. Martinez, 43 Idaho 180, 195, 250 P. 239; Meyers v. City of Idaho Falls, 52 Idaho 81, 89–90, 11 P.2d 626.

In 51 Am.Jur., [Taxation], Section 528, Page 531, it is said:

"The primary rule of construction the intention of the legislature and of statutes—to ascertain and declare carry such intention into effect—applies to the construction of enactments granting exemptions from taxation. * * *."

Without going into a detailed history of our legislative enactments on exemptions, it is probably sufficient to say that at the time the legislature first exempted "all public cemeteries", [1913 Laws, Chapter 58], the only publicly owned cemeteries were those authorized by the municipal corporations, and since that time no other publicly owned cemeteries have been authorized, except in the two instances of the Cemetery Maintenance District Law and the Rural Cemetery Associations' Law. Bearing this in mind, it is indeed logical to conclude that the legislature by use of the words "public cemeteries" in the first exemption statute, and in the amendments thereto, was referring only to those cemeteries belonging to the public political subdivisions which it had authorized and provided for.

2 Cooley Taxation, 4th Ed., Section 690, Page 1452, notes that:

" * * * Exemption statutes may be roughly classified as belonging to one of three groups, viz.: (1) Those making ownership of the property by a certain institution or class of people the test; (2) Those making the particular use of the property rather than the ownership the test; and (3) Those making both ownership and use the test. Especially is this classification of importance in connection with exemption of charitable, religious and educational institutions. If ownership is the test, then the use is often held immaterial. If use is the test, then the ownership is generally immaterial."

In Malad Second Ward of the Church of Jesus Christ of Latter-Day Saints v. State Tax Commission, 75 Idaho 162, 269

P.2d 1077, 1079, this court, speaking through Mr. Chief Justice Keeton, with reference to church property claimed as exempt and not used exclusively for the purpose for which the church was organized, said:

"The property here being discussed and claimed as exempt from taxation is not used exclusively for the purposes for which said corporation is organized. The produce or income of the land in question, as distinguished from the land itself, is used for charitable purposes. The land is not actually occupied for any purpose mentioned in the pertinent parts of Section 63–105, I.C. In order to be exempt from taxation, ownership as well as use for the purposes mentioned in the statute must inhere.

"An exemption from taxation exists only where the exempt body owns the property for which the exemption is sought and the property is also used exclusively for exempt purposes, that is, ownership as well as use.

"Where property is claimed to be exempt from taxation, the test to be applied in determining the contention is the exclusive and primary use of the property so owned by such religious, fraternal or charitable corporation or society, and not the use of the proceeds, income or produce derived from the property."

In Bistline v. Bassett, 47 Idaho 66, 71–72, 272 P. 696, 697, 62 A.L.R. 323, it was held:

"It will be observed that the exemption depends solely upon the use of the property, and not upon the ownership, nor the character, charitable or otherwise, of the owner. It is purely a property exemption. Language of exemption statutes must be given its ordinary meaning. [Cases.]

"* * * An exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the law. * * * Where use is the criterion, the exemption is lost if the property is appropriated to other uses. * * * To ascertain whether the property of a corporation falls within an exemption statute, exempting from taxation hospitals used for benevolent purposes, from which no profit is derived, it must not only be judged by its declared objects but also by what use is actually made of the hospital. * * *

"Our statute expresses no distinction between private and public hospitals. * * * Whatever may be its relative meaning, however, it contemplates the conferring of benefits as distinguished from the making of profits. * * * But if there still remain any doubt as to the legislative intent, as excluding

private gain or aggrandizement, it is removed by the last clause of the statute, 'from which no profit is derived.' "

■ The basis of tax exemptions is the accomplishment of public purpose and not the favoring of particular persons or corporations at the expense of taxpayers generally. State v. Ritschel, 220 Minn. 578, 20 N.W.2d 673, 168 A.L.R. 274.

The problem here presented loses its confusion when we consider the vast difference between use by the public, and ownership by the public. Most private property is in some way used by the public; to that extent, therefore, it may be properly classed as public property, along with publicly owned property likewise used by the public, but to hold that private property so used, becomes public property within the meaning of our constitutional and legislative enactments, exempting public property from taxation, would eliminate most of our real property taxes.

Therefore, ownership and use must concur when we apply the test for exemption; in order to be exempt from taxation, ownership as well as use for the purposes mentioned in the statute must inhere.

■ A statute granting tax exemption cannot be extended by judicial construction so as to create an exemption not specifically authorized. Malad Second Ward of the Church of Jesus Christ of Latter-Day Saints v. State Tax Commission.

■ Exemptions are never presumed. The burden is on a claimant to establish clearly a right to exemption. It must be in terms so specific and certain as to leave no room for doubt. Bistline v. Bassett, 47 Idaho 66, 272 P. 696, 62 A.L.R. 323.

While the attorneys for appellant and cross-respondent in their brief have stated they could find no case in point insofar as like statutory and constitutional provisions are concerned, they have cited certain cases from other jurisdictions which indicate that when the state grants exemptions, profit motives must not be present, or at least the exemption will be denied if a profit is made.

In Appeal of Ivy Hill Cemetery Co., 120 Pa.Super. 340, 183 A. 84, 86, it was said:

"* * * But the right of exemption ceases when the enterprise is conducted for private profit even though it may be a business that is primarily concerned with the burial of bodies. The law applicable to cemeteries is not materially different than that applied to religious, educational, and charitable undertakings. In such cases property otherwise exempt may not be rented for the conduct of business by others for private profit without affecting the right to exemptions, and it is the use

to which the land is put rather than the compensation received which determines the status. * * *"

In West Ridgelawn Cemetery v. State Board of Tax Appeals, 124 N.J.L. 284, 11 A.2d 593, 594, affirmed 125 N.J.L. 274, 15 A.2d 595, the court said:

"Tax exemptions are not favored. Each claim for exemption must be critically examined. Unless the right is clearly established it should be and is denied. [Cases]. The Cresthaven Cemetery Association, as we have seen, is a business corporation organized and operated for profit. It uses its capital to buy, sell and acquire cemetery lots, etc., for profit. It has the equal power under its charter, to use its capital to manufacture tombstones, ornamental statuary, for profit, to operate a hotel, a mine, or for any of the many and diversified other objects permitted under our general corporation act.

"The rural cemetery act, supra, exempts cemetery lands and property of a *cemetery association,* however incorporated but it does not exempt the lands and property of a business association, organized under our general corporation act which chances to deal, inter alia, in cemetery lots for profit."

Other cases discussing the profit angle are: Commonwealth v. Trustees Evergreen Burial Park, 176 Va. 9, 10 S.E.2d 495; City of Clifton v. State Board of Tax Appeals, 133 N.J.L. 379, 44 A.2d 102; Id., 136 N.J.L. 213, 55 A.2d 58, 59; Ponder v. Richardson, 213 Ark. 238, 210 S.W.2d 316, 317; Crown Hill Cemetery Ass'n v. Evatt, 143 Ohio St. 399, 55 N.E.2d 660; Sunset Memorial Park Ass'n v. Evatt, 145 Ohio St. 194, 61 N.E.2d 207, 208, 209; Oak Lawn Cemetery v. County Commissioners of Baltimore County, 174 Md. 280, 198 A. 600, 603–604, 115 A.L.R. 1478; Laurel Hill Cemetery Ass'n v. City and County of San Francisco, 81 Cal.App.2d 371, 184 P.2d 160, 163.

In view of the wording of our exemption statute it would also seem that the profit motive of the corporation would be a controlling factor in holding that the legislature had not intended to grant the privilege of tax exemption to a private cemetery, owned, organized and operated by a business corporation for profit purposes.

We therefore hold that none of the property of the corporation involved in this proceeding is exempt from the tax levied and assessed in this case, and that such corporation is not a public cemetery within the intent and meaning of Section 63–105, Idaho Code, so as to entitle it to exemption from taxation. Having come to that conclusion it is therefore unnecessary to comment further on the contention that only the parcel from which burial lots have been sold is exempt.

It therefore follows that the decision of the trial court affirming the assessment as to the unplatted portion of said cemetery, towit, the easterly 5 acres is affirmed, and its judgment denying the county the right to assess the platted portion of said tract, towit, the westerly 5 acres, is reversed.

Cause is remanded with instructions to make Findings of Fact, Conclusions of Law and Judgment in conformance with this opinion. Costs awarded to appellant, Idaho State Tax Commission.

KEETON, C. J. and PORTER, TAYLOR and SMITH, JJ., concur.